LAWRENCE HALL, GUARDIAN (ESTATE OF JESSICA
HALL) *v.* J. WILLIAM BURNS, COMMISSIONER OF
TRANSPORTATION
(13711)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js.

Argued October 10, 1989—decision released January 23, 1990

*Richard A. Bieder,* with whom, on the brief, was *Joan C. Harrington,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom were *Lawrence Russ,* assistant attorney general, and, on the brief, *James E. Coyne, Garie J. Mulcahey* and *H. Owen Chace,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This appeal concerns an action brought under General Statutes § 13a-144[1] by

---

[1] General Statutes § 13a-144 provides: "DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in per-

the plaintiff Lawrence Hall, as guardian of the estate of Jessica Hall, his granddaughter, against the defendant commissioner of transportation, J. William Burns, for injuries sustained in a motor vehicle accident allegedly caused by the defendant's neglect and default in maintaining routes 6 and 25 in Newtown. The case was heard before a jury and was bifurcated on the

son or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

issues of liability and damages. On October 28, 1988, the jury returned a verdict in favor of the defendant. The plaintiff subsequently filed a motion to set aside the verdict that was denied on March 3, 1989, and the court, *Stodolink, J.,* rendered judgment for the defendant. From that judgment the plaintiff appeals. Pursuant to Practice Book § 4023, we transferred the case to ourselves. We find no error.

The jury could reasonably have found the following facts, which will be supplemented as the issues require. On August 4, 1983, Jessica Hall was involved in a motor vehicle accident at the intersection of routes 6 and 25 and the spur from exit 9 of I-84 in Newtown. Jessica was a passenger in a 1983 model pickup truck driven by her mother, Wendy Hall. Wendy Hall left exit 9 of I-84 and proceeded eastbound on the spur to routes 6 and 25. At this point, routes 6 and 25 overlap into one road. When she approached the intersection of the spur and routes 6 and 25, she attempted to take a left turn to go north on routes 6 and 25. She testified that because her vision was obstructed by brush she could not see traffic traveling south on routes 6 and 25 so she inched her way onto the highway to obtain a view. At that point, a tractor trailer truck driven by Charles Zekelsky was driving southbound on routes 6 and 25. Wendy Hall did not see the tractor trailer until it was suddenly upon her vehicle. Zekelsky attempted to avoid a collision by braking and swerving to the left but was unable to do so and struck Wendy Hall's truck, severely injuring Jessica Hall.

The plaintiff brought an action against the defendant in two counts based on General Statutes § 13a-144. The first count alleged that the defendant's neglect and default in maintaining routes 6 and 25 was the cause of Jessica Hall's injuries. The second count alleged, in the alternative, that the defendant's neglect and default in maintaining routes 6 and 25 was the *sole proximate*

*cause* of Jessica Hall's injuries. Specifically, the complaint alleged that the highway was in a defective and hazardous condition in that trees or brush, upon or near the traveled portion of said highway, were overgrown "or misplaced," thereby obstructing the view of drivers approaching the intersection. In addition to alleging the improper placement of a stop sign on this spur, the complaint went on to allege that the defendant failed to provide adequate warning devices to alert drivers traveling on routes 6 and 25 of the approaching intersection. On April 15, 1987, the defendant moved to strike the first count of the plaintiff's complaint for failure to plead that the defendant was "the sole proximate cause" of Jessica Hall's injuries. On July 20, 1987, the trial court, *Sullivan, J.*, granted the defendant's motion to strike count one of the complaint.

The case proceeded to trial on the issue of liability and the jury returned a general verdict in favor of the defendant. The trial court denied the plaintiff's motion to set aside the verdict and the plaintiff appeals.

The plaintiff claims that the trial court committed a number of errors in its evidentiary rulings and instructions to the jury. Specifically, the plaintiff claims that the trial court erred in its evidentiary rulings concerning the: (1) exclusion of evidence of a prior accident; (2) exclusion of photographs of subsequent remedial measures; (3) exclusion of a photograph which "significantly" affected an eyewitness's credibility; and (4) permission given to defense counsel to comment on the lack of prior problems at this intersection during closing argument. In addition, the plaintiff claims that the trial court made the following errors in its instructions to the jury: (1) charging the jury that it may draw an adverse inference from the plaintiff's failure to call a witness; (2) charging the jury that it could consider the defendant's workload; (3) failing to charge on the defendant's subduty to investigate; (4) failing to charge

on the defendant's duty to close the highway; and (5) charging the jury that the defendant's neglect and default must be the sole proximate cause of the plaintiff's injuries.

## I

### EVIDENTIARY RULINGS

First, the plaintiff contends that the trial court erred in excluding evidence of a prior accident that occurred at the same intersection of routes 6 and 25 and the spur from exit 9 of I-84. The prior accident, the plaintiff asserts, was substantially similar to the present accident and should have been admitted to prove the existence of a defect. The defendant, on the other hand, claims that the trial court properly rejected the evidence because there was insufficient proof of similarities. Specifically, the defendant maintains that there was no claim that the prior accident in any way resulted from a sight line obstruction caused by brush or vegetation as in the present case. Moreover, the defendant asserts that the testimony offered regarding the specifics of the prior accident was based on hearsay from the police officer who conducted the investigation of the prior accident. We find no error on this ruling.

It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983). Evidence of other similar accidents is admissible "to prove the existence of a particular physical condition, situation, or defect." C. McCormick, Evidence

(3d Ed.) § 200; *Zheutlin* v. *Sperry & Hutchinson Co.,* 149 Conn. 364, 179 A.2d 829 (1962); *Facey* v. *Merkle,* 146 Conn. 129, 136, 148 A.2d 261 (1959); *Wilkins* v. *G. Fox & Co.,* 125 Conn. 738, 7 A.2d 434 (1939). A party attempting to offer evidence of prior accidents or "evidence of the experience of others" has the burden of proving "that the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff. *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 226, 10 A.2d 600 [1940]; *Wilkins* v. *G. Fox & Co., Inc.,* [supra, 739]; *Shuchat* v. *Stratford,* 125 Conn. 566, 571, 7 A.2d 387 [1939] . . . ." *Zheutlin* v. *Sperry & Hutchinson Co.,* supra, 366–67. "We cannot ignore completely that when a claim is made for the showing of prior accidents, an element of a trial on collateral issues, sometimes termed a trial within a trial, is introduced with a real possibility of undue delay." *Kelsay* v. *Consolidated Rail Corporation,* 749 F.2d 437, 443 (7th Cir. 1984). Moreover, "[e]vidence of prior occurrences will be admitted only if the proffering party first lays a sufficient foundation of 'substantial similarity of conditions' between the immediate and the prior happenings." *Marois* v. *Paper Converting Machine Co.,* 539 A.2d 621, 625 (Me. 1988). "The question whether the essential preliminaries have been established is for the court, and the court's decision will not be disturbed unless there is clear and manifest error." *Zheutlin* v. *Sperry & Hutchinson Co.,* supra, 367.

In an offer of proof, the plaintiff attempted to prove the similarity of the accidents through the testimony of Officer Michael Kehoe, who had investigated the prior accident. Kehoe testified that the prior accident occurred on the night of July 30, 1983, at approximately 9:45 p.m. Androcovich, while driving eastbound on the spur of exit 9 of I-84, attempted to take a left turn on

routes 6 and 25 when he was struck by a car traveling southbound on routes 6 and 25. Kehoe testified that the road conditions at the time of the accident were clear and dry. Further, he testified that he issued a citation to Androcovich, the driver traveling eastbound on the spur attempting to take a left turn, for failure to yield a right-of-way after a stop. Significantly, on cross-examination, the officer testified that neither operator of the vehicles claimed that any brush or vegetation or sight line interference was a contributing factor to the accident.

In *Facey* v. *Merkle,* supra, this court stated that "in laying the foundation that the material conditions were substantially identical, two aspects are involved. One is that the [place] itself must have been substantially in the same condition. The other is that the use made of it must have been substantially identical in all material respects with the use which was actually involved in the case and was reasonably to be anticipated." Id., 136. The defendant does not contend that the intersection was not in "substantially" the same condition on the night of the prior accident but rather that the prior accident was not "substantially similar" to the present accident because the plaintiff failed to establish that both accidents resulted from or even involved the same cause, i.e., the brush condition. Therefore, whether the Androcovich accident in this case is substantially similar involves the second aspect enunciated in *Facey* that "the use made of it must have been substantially identical in all material respects." Id.

In *Facey,* the plaintiff, as administrator of the decedent's estate, brought suit against the defendants, owners of a rest home, for damages as a result of a defective stairway that caused the death of the decedent. Id., 131. In the defendants' case-in-chief, the defendants attempted to put into evidence, through the testimony of a witness, that others had used the same stairway

on prior occasions without incident. Id., 135–36. The court excluded the evidence because the defendants failed to show "that the use on the part of the [other individuals who used the stairway] was . . . substantially identical with the reasonably anticipated use of this decedent." Id., 136. The court held that there was no evidence that the prior individuals shared the same general physical condition as that of the decedent so as to make their use substantially identical. The defendants in *Facey* failed to prove that the contributing cause to the present accident, the physical condition of the decedent, was a factor in the prior use so as to make the prior use substantially similar.

Similarly, in the present case the plaintiff failed to prove that the alleged cause of the present accident, overgrown brush, was the same "cause" of the prior accident. In fact, Kehoe testified that he issued a citation to Androcovich for failure to yield a right-of-way after a stop at that very intersection, thus implying that the driver's own negligence was a contributing factor. Moreover, the fact that there was no evidence during the plaintiff's offer of proof that Androcovich had ever filed a claim or a lawsuit against the defendant further suggests that the driver's own negligence had caused the accident. See *Kelsay* v. *Consolidated Rail Corporation,* supra.

If the court had allowed the evidence of the prior accident, the jury might have inferred from such evidence alone that the defect in the highway existed and was the cause of the latter accident without those issues ever having been proved. Id. The term "substantially" in this context is relative in its significance and it is a term that must be evaluated according to the facts of a particular case in determining whether the trial court's exercise of discretion was "clear and manifest error." See *Zheutlin* v. *Sperry & Hutchinson Co.,* supra. Although this court has never decided that, in order

to be admissible, there must be evidence that the prior accident resulted from the same cause as the present accident, we note that other jurisdictions have required the offering party to prove the same cause in such cases. *Gardner* v. *Southern Railway Systems,* 675 F.2d 949 (7th Cir. 1982) (per curiam); *Ashby Division of Consolidated Aluminum Corporation* v. *Dobkin,* 458 So. 2d 335, 337 (Fla. App. 1984); *I.B.L. Corporation* v. *Florida Power & Light Co.,* 400 So. 2d 1288, 1288–89 (Fla. App. 1981) (must show similarity of conditions, causes and circumstances); *Rucker* v. *Norfolk & Western Railway Co.,* 64 Ill. App. 3d 770, 785, 381 N.E.2d 715 (1978), rev'd on other grounds, 77 Ill. 2d 434, 396 N.E.2d 534 (1979) (generally, the rule in relation to the competing evidence of prior similar occurrences is that the evidence must tend to show a common cause); *Freed* v. *Simon,* 370 Mich. 473, 475, 122 N.W. 813 (1963) (evidence of prior accidents at the same place arising from the same cause is admissible); *Cameron* v. *Small,* 182 S.W.2d 565, 570 (Mo. 1944) (must prove slipping of others occurred under same conditions, at the same place, and from the same cause as the slipping of the plaintiff); *Schultz* v. *Webster Groves Presbyterian Church,* 726 S.W.2d 491, 495 (Mo. App. 1987) ("evidence of other 'accidents' of like character caused by the same condition and occurring under substantially the same conditions is admissible").

As mentioned earlier, it is within the trial court's sound discretion to admit evidence of prior accidents. Sound discretion, by definition, means a discretion " 'that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . .' " *State* v. *Williams,* 195 Conn. 1, 8, 485 A.2d 570 (1985). Given the circumstances of this case, especially the gravamen of the

claimed overgrown brush condition, we cannot say that it was "clear and manifest error" to have excluded the prior accident evidence.[2]

The second evidentiary claim of error is that the trial court erred in excluding photographs that depicted the intersection after the defendant had cut back the brush from the sight line. The plaintiff contends that the policy prohibiting evidence of remedial measures is not applicable to a cause of action based on § 13a-144 and therefore the photographs are admissible to establish the existence of a defect. The plaintiff bases his argument on our holding in *Sanderson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 143, 491 A.2d 389 (1985), where we stated that the policy prohibiting evidence of postaccident remedial measures is inapplicable in strict products liability cases. In the alternative, the plaintiff argues that even if the general rule excluding such evidence is applicable, the photographs should nonetheless be admitted on the issue of causation as an exception to the general rule. The defendant, on the other hand, contends that the general rule is applicable and *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra, is inapposite. We find no error in this ruling.

The general rule is that evidence of subsequent repair is not admissible on the issue of negligence. *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra; *Rokus* v. *Bridgeport,* 191 Conn. 62, 463 A.2d 252 (1983); *Blanchard* v. *Bridgeport,* 190 Conn. 798, 463 A.2d 553 (1983); C. McCormick, Evidence (3d Ed. 1984) § 275; 2 J. Wigmore, Evidence (Chadbourn Rev. 1979) § 283; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.4 (a); see also Fed. R. Evid. 407 ("evidence

---

[2] We need not reach the defendant's contention that the evidence offered through the testimony of the plaintiff's witness was hearsay because we have dismissed the plaintiff's claim of error based on the absence of evidence demonstrating substantial similarity of the accidents.

of the subsequent [repair] is not admissible to prove negligence or culpable conduct"). We have said that "[i]t has long been the settled rule in this State that evidence of subsequent repairs is inadmissible to prove negligence or an admission of negligence at the time of the accident." *Carrington* v. *Bobb,* 121 Conn. 258, 262, 184 A. 591 (1936); see *Rokus* v. *Bridgeport,* supra, 65. This court, however, has admitted evidence of subsequent remedial measures if offered for other purposes such as: (1) to establish the defendant's control of the premises where a defect was located; *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 155, 239 A.2d 493 (1968); *Torre* v. *DeRenzo,* 143 Conn. 302, 307, 122 A.2d 25 (1956); *Shegda* v. *Hartford-Connecticut Trust Co.,* 131 Conn. 186, 188, 38 A.2d 668 (1944); (2) to show feasibility of repair in product liability cases; *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra; and (3) to show the general area or scene of the injury. *Rokus* v. *Bridgeport,* supra; *Blanchard* v. *Bridgeport,* supra.

The rule of exclusion is "based on narrow public policy grounds, not on an evidentiary infirmity." *Rokus* v. *Bridgeport,* supra, 67 n.1. In *Rokus* v. *Bridgeport,* supra, this court stated that the exclusion of subsequent remedial measures based on public policy grounds "presupposes that to admit evidence of subsequent repairs to an identified hazardous condition as proof of negligence penalizes the defendant for taking remedial measures. This discourages alleged tortfeasors from repairing hazards, thereby perpetuating the danger. This policy fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence, even though it requires the plaintiff to make a case without the use of evidence of the subsequent repairs. The rule's purposes are furthered, however, only when the excluded evidence relates to repairs of a hazardous condition." The rule of exclusion has also been justified on

relevancy grounds.[3] Under the relevancy rationale, changes made after an accident are not probative of the reasonableness of a defendant's conduct prior to the accident. See comment, "Subsequently Remedying Strict Products Liability: *Cann* v. *Ford*," 14 U.

[3] Evidence of subsequent remedial measures is often excluded for lack of relevancy. "If . . . bridges, sidewalks, [highways], never caused corporal injury except through the negligence of their owner, then his act of improving their condition, after the happening of an injury thereat, would indicate a belief . . . that the injury was caused by his [culpable conduct]. But the assumption is plainly false; injuries may be, and constantly are, caused by reason of inevitable accident, and also by reason of contributory negligence of the injured person. To improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been capable of causing such an injury, but indicates nothing more, and is equally consistent with a belief in injury by mere accident, or by contributory negligence, as well as by the owner's negligence. . . . On this ground, then, namely, that the supposed inference from the act is not the plain and most probable one, such acts of repair or improvement should be excluded." 2 J. Wigmore, Evidence (Chadbourn Rev. 1979) § 283; see, e.g., *Steele* v. *Wiedemann Machine Co.*, 280 F.2d 380, 382 (3d Cir. 1960).

Furthermore, in *Rokus* v. *Bridgeport*, 191 Conn. 62, 67 n.1, 463 A.2d 252 (1983), we stated that "an original basis for the exclusion of subsequent repairs evidence . . . was the belief that such evidence was not even logically relevant . . . ." *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 145 n.8, 491 A.2d 389 (1985). " 'The fact that an accident has happened and some person has been injured, immediately puts a party on a higher plane of diligence and duty from which he acts with a view of preventing the possibility of a similar accident, which should operate to commend rather than condemn the person so acting. If the subsequent act is made to reflect back upon the prior one, although it is done upon the theory that it is a mere admission, yet it virtually introduces into the transaction a new element and test of negligence which has no business there, not being in existence at the time.' *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, 531–32, 50 A. 42 (1884)." Id.

It has also been said: "Proponents of the exclusion note that evidence of subsequent changes may be highly prejudicial and subject to jury misuse. The underlying fear is that rather than using the evidence as one piece of information bearing on whether the defendant's conduct was reasonable under the circumstances, a jury will view the subsequent changes as an admission of fault. This seems particularly likely in a case where the changes were neither expensive nor complex and easily could have been made before the accident." Comment, "Subsequently Remedying Strict Products Liability: *Cann* v. *Ford*," 14 U. Conn. L. Rev. 759, 766–67 (1982).

Conn. L. Rev. 759, 764 (1982). As Dean Prosser has stated, "[t]he culpability of the actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward 'with the wisdom born of the event.' " W. Prosser, Torts (4th Ed. 1971) § 31, p. 146.

The plaintiff argues that the public policy grounds supporting the exclusion of subsequent remedial measures in negligence cases is inapplicable to a cause of action based on § 13a-144. In support of this argument, the plaintiff relies on our holding in *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra. In *Sanderson,* the plaintiffs, coadministrators of the decedent's estate, brought a products liability action against the defendant for the faulty design, manufacturing and marketing of an automatic emergency parachute pack release system, Sentinel MK 2000, that caused the death of the decedent. On appeal of the jury verdict in favor of the defendant, the plaintiffs claimed, inter alia, that the trial court had erred in refusing to admit portions of a deposition offered at trial relating to a subsequent design change in the Sentinel MK 2000. Id., 143. The plaintiffs argued that the public policy supporting the exclusion of subsequent remedial measures in negligence cases does not apply where a strict products liability theory is pursued.

In agreeing with the plaintiffs' argument in *Sanderson,* we noted that a strict products liability action "is based on a policy that assumes that certain losses are better distributed in our society not on the basis of fault, but rather with regard to the ability of the involved parties to absorb them. 'The doctrine represents a policy decision that the burden of injuries brought about by a defective product should not be placed upon the individual who uses the product, but, rather, should be borne by the manufacturer or supplier, and thus eventually be spread among the consuming public. . . . '

Given the strong economic influences on the conduct of a designer or manufacturer created by the existence of the strict liability theory, it is unlikely that any evidentiary use of subsequent remedial measures will discourage a designer or manufacturer from taking them." Id., 145–46. In holding, however, that the public policy supporting the exclusion of subsequent remedial measures is inapplicable to a products liability case, we explicitly stated that "the rule of exclusion still holds in negligence cases . . . ." Id., 148 n.11.

Although this case is not a negligence cause of action but is based on an alleged breach of a statutory duty, we conclude, contrary to the plaintiff's contentions, that the policy considerations for excluding subsequent remedial measures in negligence cases are equally applicable to a statutory cause of action based on General Statutes § 13a-144. In *Sanderson,* our reasoning for holding the rule inapplicable was based on the policy of a strict products liability cause of action, specifically, that a manufacturer is better able to absorb the losses than the individual who used the product. A cause of action brought under § 13a-144, however, is based on a breach of a statutory duty to repair and maintain the state highways. The liability of the state for breach of its statutory duty is to pay a *penalty*. See *Bartram* v. *Sharon,* 71 Conn. 686, 43 A. 143 (1899). "[T]he statute . . . simply imposes a penalty measured by the actual injury caused by disobedience of law, to be enforced by the party injured through an action on the statute . . . the action . . . [is] to enforce a penalty; and the liability created depends on the commission of the very act for which the penalty is imposed." Id., 692. The policy of § 13a-144 is to compensate those injured and to penalize the commissioner of transportation for his neglect and default in carrying out his statutory duty to repair and maintain the state highways. Section 13a-144 is, therefore, not based on the policy that

the commissioner of transportation is better able to absorb the losses than the traveler who used the "defective highway." The unique policy considerations of the strict products liability doctrine do not govern in a cause of action brought under § 13a-144. We therefore conclude that the policy of the general rule excluding subsequent remedial measures is applicable to this case.

Moreover, in *Sanderson,* we held that our conclusion was further "reinforced by the greater probative value of such measures in strict liability as opposed to negligence cases. 'The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce, not with the specific conduct of the defendant.' . . . Because the manufacturer's culpability is not an issue, there should be no concern that the subsequent changes will be construed as an admission of negligence." (Citations omitted.) *Sanderson* v. *Steve Snyder Enterprises, Inc.,* supra, 147.

The plaintiff claims that this same rationale is equally applicable in a cause of action based on § 13a-144. With respect to the finding of a defect, the plaintiff maintains that strict liability in products cases is "very similar to the statutory cause of action under § 13a-144." The plaintiff states that under strict liability the focus is on whether the product is unreasonably dangerous and the focus in an action under § 13a-144 is whether the highway is "less than reasonably" safe. Therefore, the plaintiff continues, because the focus in both a products case and a § 13a-144 case is on the defective object, i.e., product and highway, and not on the defendant's conduct, the rule excluding subsequent remedial measures is inapplicable.

In a cause of action against the state the plaintiff must prove, inter alia, the existence of a defect on a state highway. A defect in the highway is " '[a]ny object

in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . . ' " *Hay* v. *Hill,* 137 Conn. 285, 288, 76 A.2d 924 (1950), quoting *Hewison* v. *New Haven,* 34 Conn. 136, 141 (1867); *Donnelly* v. *Ives,* 159 Conn. 163, 167, 268 A.2d 406 (1970). The state, however, is not liable for every object that obstructs or hinders the use of the road. *Pape* v. *Cox,* 129 Conn. 256, 260, 28 A.2d 10 (1942). "The mere fact that [a defect] exists upon a highway does not of itself render the highway defective." Id. The plaintiff must further prove that the defendant received actual or constructive notice of the defect and had a reasonable opportunity to remedy the defect before liability will be imposed on the defendant. *Baker* v. *Ives,* 162 Conn. 295, 294 A.2d 290 (1972); *Donnelly* v. *Ives,* supra; *State* v. *Englehart,* 158 Conn. 117, 256 A.2d 231 (1969). Even if a defect exists on a state highway and the defendant received actual or constructive notice and had a reasonable opportunity to remedy the defect, liability arises and is thereby imposed on the defendant only if the "defective highway" is the sole proximate cause of the claimed injuries. Liability imposed on the defendant under § 13a-144 for a "defective highway" is based on proof of the existence of a defect *and* on the defendant's failure to remedy the defect within a reasonable time after receiving actual or constructive notice of the defect, where that defect is the sole proximate cause of a plaintiff's injury. Thus, contrary to the plaintiff's contentions, the thrust of a cause of action based on § 13a-144 is the defendant's conduct in discharging his duty to repair an alleged defect in the highway and is not focused solely on the defect. We have consistently held that "[t]he state is not an insurer of the safety of travelers on the highways which it has a duty to repair.

Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised 'reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler.' " (Citations ommitted.) *Baker* v. *Ives,* supra, 299. The plaintiff has failed to persuade us that the policy of the general rule excluding subsequent remedial measures in negligence cases should be inapplicable to a cause of action brought under § 13a-144. Therefore, we find that the trial court committed no error in excluding the photographs on the issue of whether a defect existed on the highway, i.e., the brush condition.

Having concluded that the rule excluding evidence of subsequent remedial measures is applicable in a cause of action based on § 13a-144, we now turn to the plaintiff's contention that the photographs are, nevertheless, admissible on the issue of causation as an exception to the general rule. The plaintiff contends that, because the defendant sought to establish that the defective highway was not the sole proximate cause of Jessica Hall's injuries by arguing that Wendy Hall was negligent, the photographs would have illustrated that Wendy Hall exercised reasonable care in inching her way onto the highway and therefore was not a cause of the accident. The defendant, however, claims that the photographs depicting the scene of the accident after the brush had been cut back twenty feet are irrelevant to whether Wendy Hall exercised reasonable care on the day of the accident.[4]

[4] The plaintiff further suggests that the photographs also explain how a defense witness who visited the scene after the brush was cut back, "could think that the open view was the view which he had at the time of the accident." The plaintiff asserts that "[t]he photographs would have explained the difference between [the defense witness'] initial statement to the police that he first saw the Hall vehicle when it came into his lane and his trial testimony that he saw her before the stop sign rolling through the stop sign." The plaintiff, however, has failed to show in his brief, with appro-

We have stated that "[e]vidence admissible for one purpose but not for the other may nevertheless be admitted." *Blanchard* v. *Bridgeport,* supra. In order for the photographs to be admitted into evidence on the issue of causation as an exception to the general rule that subsequent repairs are inadmissible, the plaintiff must prove that the repairs are not being used as evidence of the defendant's breach of his statutory duty under § 13a-144. "The central question is the plaintiff's purpose in introducing the evidence." *Rokus* v. *Bridgeport,* supra, 66. A preliminary question concerning the admissibility and relevancy of evidence is within the trial court's broad discretion; *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); and on appeal the court will not overrule a trial court's discretion unless there is clear evidence of abuse of that discretion. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988). After a careful review of the transcript and exhibits, we do not find that the trial court abused its discretion in excluding the photograph. Another photograph taken on the day of the accident from approximately the same angle of the same location as the photograph that the plaintiff attempted to introduce had already been admitted into evidence. The plaintiff, however, claims that the excluded photograph made clear how likely it was that Wendy Hall could not see onto the highway because of the overgrown brush obstructing her sight line. The postaccident photograph was taken after the overgrown brush had been cut back and could not have illustrated that Wendy Hall's sight line was or was not obstructed on the day of the accident. Thus, the photograph would not have been relevant or probative of the plaintiff's claim and could have confused or misled the jury. Therefore, we find that

priate references to the trial transcript, that he attempted to offer the photographs in evidence at the time of the cross-examination of this witness or at any other time during the trial for this purpose. Therefore, the plaintiff has failed properly to preserve this issue for appeal.

the trial court did not abuse its discretion in excluding the photographs on the issue of causation and on the existence of a defect.

The plaintiff's next claim of error is that the trial court erred in excluding a photograph that he claims would have impeached the credibility of a defense witness's testimony. The deposition testimony of Dennis Best, the only eyewitness who was not involved in the accident, was introduced at trial by the defendant. Best was operating his vehicle northerly on routes 6 and 25. His testimony, the plaintiff claims, was harmful on the issue of causation as he testified that he was able, for about sixty to seventy feet, to observe the vehicle in which Jessica Hall was a passenger approaching the intersection and that the plaintiff's vehicle never stopped. The plaintiff sought the admission of a photograph (Exhibit T for identification) that would have, as the plaintiff contends, severely undermined Best's credibility. The plaintiff asserts that the photograph showed that the condition of the intersection was such that Best could not have seen the Hall vehicle until it was very close to routes 6 and 25. The trial court, in excluding the photograph, stated: "[I]t will only serve to confuse rather than assist in determining the point that you raised. Obviously, there are a lot of pictures in evidence that you can argue from and certainly A seems to be very appropriate, much more appropriate than [Exhibit T for identification]." We find no error on this ruling.

We have held that photographs that are properly authenticated and relevant to the issues are admissible in evidence at the discretion of the trial court. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 150–51, 540 A.2d 666 (1988); *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 323, 430 A.2d 1 (1980); *Harris* v. *Ansonia,* 73 Conn. 359, 363–64, 47 A. 672 (1900). If a photograph "has a tendency to prejudice the jury, the question before the court is

whether its value as evidence outweighs its possible prejudicial effect." *Pisel* v. *Stamford Hospital,* supra, 324; *State* v. *LaBreck,* 159 Conn. 346, 351, 269 A.2d 74 (1970). If the court finds that a photograph would confuse and mislead rather than assist the jury, it is within the court's discretion to exclude the evidence. *Harris* v. *Ansonia,* supra, 363. After examining the photograph that the plaintiff attempted to have admitted into evidence and those already admitted into evidence, including specifically Exhibit A, we agree with the trial court that the photograph would have only confused the jury. Exhibit T for identification, the photograph the plaintiff attempted to admit into evidence, showed the intersection as it appeared *after* the defendant cut back the brush. Exhibit A, already admitted into evidence, showed the intersection as it appeared on the day of the accident. Further, both photographs were taken from approximately the same direction. We agree that the court properly excluded the photograph because it is clear that Exhibit A, which shows the intersection as it appeared on the day of the accident, was as appropriate and as probative of the claim that the plaintiff wished to make. The plaintiff has failed to show an abuse of discretion and we therefore find no error.

Finally, the plaintiff contends that the trial court erred in permitting defense counsel to comment on the lack of prior problems at the intersection. Prior to closing arguments, the plaintiff made a motion in limine to prevent the defendant from arguing that there were no prior accidents or complaints regarding the intersection on routes 6 and 25. In response to the plaintiff's motion, the defendant stated that he would only argue that the plaintiff's witness, John W. Preston, a district maintenance manager for the department of transportation, stated that there had never been a claim or lawsuit against the defendant relative to this particular intersection. The defendant claimed that he had

asked Preston that question, and the trial court stated that it recalled the defendant's having asked that question. The plaintiff conceded that the defendant had asked Preston, "In fact, had you ever had any other claim—lawsuit—with regard to brush removal, sight line restriction—at this particular intersection," but, upon review of the tape of the entire cross-examination of Preston, the plaintiff claimed that he had objected to this question stating that it was irrelevant, and the trial court had sustained the plaintiff's objection. No other question on this subject was asked. The court, nevertheless, denied the plaintiff's motion in limine and the plaintiff properly excepted and requested that an exception be noted at the time of the defendant's closing arguments.

During closing argument, the defendant stated: "Because as we know, a lot of people—Mr. Hall—I think you can infer that he went through the intersection without any problem, Mr. Dittman told us he did, Mr. Hunihan told us he did, the officers didn't notice anything, they told us that. The only person who had a problem was Wendy Hall, that we're aware of." After completion of the defendant's argument, the plaintiff moved for a mistrial based on the defendant's statement that, the plaintiff asserts, was outside the evidence. In response, the defendant insisted to the court that he had limited his comment to those who "testified in this case." As the plaintiff properly points out, the defendant did not limit his statement about Wendy Hall. The court denied the plaintiff's motion for a mistrial and the plaintiff excepted. We find no error on this ruling.

We first must note that "[t]he trial court is invested with a large discretion with regard to arguments of counsel, and we should interfere only where that discretion was clearly exceeded or abused to the manifest injury of some party." *Bryar* v. *Wilson,* 152 Conn. 162,

165, 204 A.2d 831 (1964). The plaintiff contends that the defendant's remarks during closing argument prejudiced the plaintiff with respect to the existence of a defect. We do not interpret the defendant's remarks during closing argument to be outside of the evidence as the plaintiff claims. The defendant was remarking on those witnesses who had testified that they had not had a problem while driving through the intersection. The defendant's statement that "[t]he only person who had a problem was Wendy Hall, that we're aware of" can be understood to mean that Wendy Hall was the only one who *testified* who had a problem at the intersection. Although the defendant did not state that "the only one that had a problem with the intersection that testified," it can fairly be understood with reference to the defendant's prior remarks in his closing argument that that was the intended meaning.

In reviewing the transcript of the trial court's instructions, we note that the trial court stated: "In the event that your recollection of the evidence differs from any statement I may make or which counsel may have made, it is your recollection not mine or counsel's which must control. . . . You are the sole and exclusive judges of the facts. . . . You are not to surmise or guess but are to determine the facts on all of the evidence and exhibits which both sides have presented to you in the court." The court properly instructed the jury that it was to consider only the evidence presented during trial by the plaintiff and the defendant. We presume that the jury followed the court's instructions unless the contrary appears. *State* v. *Rouleau,* 204 Conn. 240, 254, 528 A.2d 343 (1987); *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987); *State* v. *Gabriel,* 192 Conn. 405, 416, 473 A.2d 300 (1984). Accordingly, under the circumstances, the error, if any, was harmless.

## II

## JURY INSTRUCTIONS

The plaintiff's first claim of error regarding the trial court's instructions is that the trial court erred in instructing the jury that it was permitted to draw an adverse inference from the plaintiff's failure to call Steven Hall as a witness. The plaintiff argues that the defendant failed to establish one of the two requirements necessary for a *Secondino* charge, specifically, that the witness, Steven Hall, the plaintiff's ward's father, was one who would naturally be produced by the plaintiff. Moreover, the plaintiff contends that the rule of law excluding evidence of prior happenings to individuals precluded Steven Hall from testifying because there was no proof that this witness had passed through this intersection under substantially the same conditions as existed at the time of the accident. The defendant, on the other hand, contends that this witness was one who would naturally be produced "and who could be expected to have peculiar information material to the case since he had previously driven through the intersection approximately five times during the eight weeks before the subject accident. His testimony certainly would have been relevant since he had the opportunity to and would have noticed any overgrown brush if it had obstructed his sight line." We find no error on this claim.

It is well settled law that a trial court is permitted to charge the jury that an adverse inference may be drawn for a party's failure to call an available and presumably favorable witness. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960); see *State* v. *Greene*, 209 Conn. 458, 551 A.2d 1231 (1988); *Shelnitz* v. *Greenberg*, 200 Conn. 58, 509 A.2d 1023 (1986); *State* v. *Brown*, 169 Conn. 692, 364 A.2d 186

(1975); *Bell* v. *Bihary,* 168 Conn. 269, 362 A.2d 963 (1975). This type of charge is known as the "*Secondino* charge." *State* v. *Greene,* supra, 469. Under Connecticut law, a "*Secondino* charge" is appropriate if two requirements are met: (1) the witness is available; and (2) the witness is one who would naturally be produced. *Secondino* v. *New Haven Gas Co.,* supra. The plaintiff does not contest the proof of availability since Steven Hall was present throughout most of the trial. The plaintiff, however, contends that Steven Hall is not a witness he would naturally produce. In *Secondino* v. *New Haven Gas Co.,* supra, we stated: "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." The plaintiff denies that Steven Hall, by reason of his relationship with the injured child, could reasonably be expected to have superior or peculiar information material to the case.

The evidence referring to Steven Hall was elicited through the testimony of Wendy Hall. She testified that on the day of the accident she was driving to her in-laws to pick up her children. Her in-laws had just recently moved to Stratford, in June, 1983. She further testified that she had driven through the intersection with her husband prior to the accident "less than five, I think. Very few times, I think, since they had just recently moved there." The defendant contends that, based on this testimony, it can be inferred that Steven Hall's testimony would have been relevant to establish the existence of a defect. The testimony of Steven Hall would certainly have been instructive on the existence of a sight line obstruction, specifically, the overgrown brush which allegedly was the sole proximate cause of Jessica Hall's injuries. Steven Hall is

the husband of Wendy Hall and the father of Jessica Hall. His relationship to the parties and to the issues, specifically the existence of a defect, would qualify him as a witness who would naturally be produced. Further, we note that Wendy Hall testified that she had never driven through the intersection herself and that her husband was the only one with whom she had driven through this intersection.

The plaintiff's argument, as set forth in his brief, that the *Secondino* charge was unwarranted, focuses on the lack of evidence establishing that Steven Hall passed through the intersection under similar conditions as those found on the day of the accident. The plaintiff, therefore, asserts that before an adverse inference can be drawn the evidence must establish that Steven Hall passed through the intersection under similar conditions as those that existed on the day of the accident. The plaintiff is confusing the requirements needed to permit an adverse inference and the requirements to permit proof of prior accidents or prior events experienced by other individuals. The only requirements necessary for a court to give a *Secondino* charge are those stated above. Whether Steven Hall passed through the intersection under the same condition as his wife is a question of fact for the jury. As we have stated in *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 343, 422 A.2d 260 (1979), "it is for the jury to determine, from the evidence presented, whether the absent witness's testimony would be material or substantial to the case as a condition precedent to drawing an adverse inference." Therefore, we conclude that the trial court did not err in giving the *Secondino* instructions.[5]

---

[5] The court gave the following charge: "The failure of a party to produce a witness who was within his power to produce and who would naturally have been produced by him, permits the inference that the testimony of that witness [would] be unfavorable to the party's cause. Such an inference is

The plaintiff's second claim of error concerning the trial court's instructions is that it erred in instructing the jury that it must consider the defendant's workload in determining whether a defect existed and whether the defendant had a reasonable opportunity to correct it. We point out that this instruction occurred as the court instructed the jury concerning the issue of whether the defendant properly discharged his duty. The plaintiff asserts that evidence of the defendant's workload is irrelevant on the issue of "defect" and is only admitted in the limited circumstances of snow and ice cases. The plaintiff objected to the admissibility of the evidence on workload during trial, moved in limine to preclude the defendant from arguing the evidence in his closing remarks, and excepted to the trial court's charge. We find no error.

permitted but not required. There are two requirements for the operation of this rule. The witness must be available, he must be a witness whom the party would naturally produce. That the witness was available is not the sole test. A witness who would naturally be produced, is one who is known to the party and who by reason of his or her relationship to the party or to the issues or both, could reasonably [be] expected to have peculiar superior information, material to the case, which if favorable, the party would produce. However, no unfavorable inference should be drawn, if the witness is available to both parties and the witness does not stand in such a relationship to the party or to the issues that the party would naturally be expected to produce him, if his testimony was favorable." The plaintiff only raises the argument that the defendant failed to satisfy the second requirement necessary for the charge. The plaintiff could have further raised the argument that the charge was insufficient. "A proper request to charge cannot . . . under our practice merely be a statement of an abstract proposition of law; Practice Book § 318; see *Ratti* v. *Berry & Sons, Inc.,* 98 Conn. 522, 524, 119 A. 894 (1923); *State* v. *Green,* 86 N.J. 281, 290, 430 A.2d 914 (1981); any more than a court may give a charge, which though legally correct, is one 'given in the abstract . . . and [is] insufficient fully to apprise the jury of the identity of the witness who was the subject of the charge.' *Shea* v. *Tousignant,* 172 Conn. 54, 59, 372 A.2d 151 (1976) (error in giving *Secondino* charge because given in abstract, made no reference to the evidence and did not fully apprise the jury of the identity of the 'particular missing witness')." *Shelnitz* v. *Greenberg,* 200 Conn. 58, 72, 509 A.2d 1023 (1986). Because the plaintiff failed to raise and brief this argument, we need not decide the sufficiency of the trial court's charge.

We will first address the plaintiff's contention that the trial court erred in charging the jury that it may consider the defendant's workload in assessing whether a defect existed. The plaintiff asserts: "In determining whether a defect exists, the jury does not decide if the defendant acted reasonably but whether the road was reasonably safe." The defendant contends, on the other hand, that the trial court properly admitted the evidence regarding the defendant's workload to allow the jury to determine if the defendant exercised reasonable care in view of all the circumstances.

As previously discussed, a highway is not "defective" under § 13a-144 until the plaintiff has established "the existence of a defect which resulted from the failure of the defendant to use reasonable care to keep the [highways] within its control in a reasonably safe condition for public travel." *Rodriguez* v. *New Haven,* 183 Conn. 473, 476, 439 A.2d 421 (1981). Thus, a "defective highway" only exists upon a showing that the defendant failed to exercise "reasonable care" in maintaining the highway in a "reasonably safe condition." See id.; *Baker* v. *Ives,* 162 Conn. 295, 294 A.2d 290 (1972); *Donnelly* v. *Ives,* 159 Conn. 163, 268 A.2d 406 (1970). The plaintiff argues that the defendant's workload "has no conceivable relevance to the existence of a defect." We do not agree. The existence of a defect cannot, as the plaintiff appears to claim, be considered in pure isolation, but rather must be viewed in the context of all of the components to be considered in assessing whether the commissioner had properly discharged his statutory duty. Relevant evidence is evidence that has a logical tendency to aid the trier of fact in the determination of an issue. *Allen* v. *Nissley,* 184 Conn. 539, 545, 440 A.2d 231 (1981); *Berndston* v. *Annino,* 177 Conn. 41, 43, 411 A.2d 36 (1974). Evidence concerning the commissioner's workload is relevant to the issue of whether the commissioner has properly dis-

charged his statutory duty. "The state is not an insurer of the safety of travelers on the highways which it has a duty to repair. Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised 'reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler.' " (Citations omitted.) *Baker* v. *Ives,* supra, 299. Further, it has been stated that " '[t]he required efforts in the interest of safety are such only as reasonably might be expected to be exerted in view of all the many circumstances deserving of consideration, and the end sought for or attained need be only such as satisfies the test of reasonableness similarly applied.' " *Bazinet* v. *Hartford,* 135 Conn. 484, 487, 66 A.2d 117 (1949), quoting *Carl* v. *New Haven.* 93 Conn. 622, 626, 107 A. 502 (1919); see *Baker* v. *Ives,* supra.[6]

The duty of "reasonable care" to be applied in § 13a-144 cases in determining the conduct of the defendant commissioner is the care which the ordinary prudent person under the circumstances would exercise. Therefore, in order for the jury to determine whether the commissioner exercised reasonable care in repairing and maintaining the state highways, it is only fair that the jury be made aware of all of the circumstances surrounding the commissioner's statutory duty. These circumstances may well include: (1) the miles of highway the commissioner is responsible to repair and maintain; (2) the number of employees and equipment available; (3) the locations of the highway; (4) the extent of its use as compared to other highways; (5) the amount of money available; and (6) any other

[6] Our analysis of the plaintiff's claim that the trial court erred in instructing the jury that it must consider the defendant's workload in determining whether a defect existed also applies to the plaintiff's claim that the trial court erred in instructing the jury that it must consider the defendant's workload in determining whether the defendant had a reasonable opportunity to remedy the defect.

relevant factors, including other needs in the highway system. See *Husovsky* v. *United States,* 590 F.2d 944, 950 (5th Cir. 1979); *Johnson* v. *State,* 636 P.2d 47 (Alaska 1981); *Butler* v. *State,* 336 N.W.2d 416 (Iowa 1983).

In our view, the trial court properly charged the jury on the definition of "defect" and its relation to the state's duty to exercise reasonable care.[7] "It is well established that jury instructions must be read as a whole and that individual instructions are not to be judged in 'artificial isolation' from the overall charge." *State* v. *Rouleau,* 204 Conn. 240, 252, 528 A.2d 343 (1987); *State* v. *Silano,* 204 Conn. 769, 773, 529 A.2d 1283 (1987). " 'The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . .' " (Citations omitted.) *State* v. *Silano,* supra. Therefore, we conclude that the trial court did not err in charging the jury on the defendant's workload.

[7] The plaintiff also raises the claim that the trial court erred in charging the jury that it "may," rather than "must," find a defect if it finds the highway to be less than reasonably safe. This court has long held that "a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . The test is whether the charge as a whole fairly presented the case so that no injustice was done." *Van Steensburg* v. *Lawrence & Memorial Hospitals,* 194 Conn. 500, 507, 481 A.2d 750 (1984). "A charge is not to be critically dissected for purposes of discovering possible inaccuracies." *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 226, 544 A.2d 623 (1988).

After a careful review of the trial court's instructions to the jury, as a whole, we find that the trial court properly charged the jury in accordance with the above principles of law. Moreover, if we assume, arguendo, that the trial court committed error here as claimed, "[i]t is not necessarily harmful error for a charge to be worded in a permissive form when it should be stated in a mandatory form." *Bell* v. *Bihary,* 168 Conn. 269, 273, 362 A.2d 963 (1975). We are not persuaded, therefore, that the error was harmful. "To be harmful, an error must be so fundamental and material that it may work injustice." Id.

The plaintiff contends that the trial court also erred in charging the jury that it "may" consider the defendant's workload because such evidence is only admitted in the limited circumstances of snow and ice cases. The plaintiff maintains that we have permitted the jury to consider the defendant's workload in snow and ice cases because of the unusual demands on the department of transportation during the winter months. In the present case, the plaintiff asserts, the burden on the department of transportation caused by winter exigencies did not exist. We do not agree.

As previously discussed, evidence of the defendant's workload to prove reasonable care is relevant in all cases brought under § 13a-144. It does not matter whether the "defect" complained of is snow, ice, a crack or break in or vegetation along the highway. The commissioner's duty under § 13a-144 is not, as we have said, one of an insurer of the safety of travelers on the highways under his jurisdiction. His duty remains the same throughout all twelve months of the year. It would be illogical to conclude that the commissioner's workload should not be considered in evaluating whether he has properly discharged his statutory duty simply because a cause of action under the statute arose in August as opposed to January. Such evidence is clearly relevant. *Shirlock* v. *MacDonald,* 121 Conn. 611, 616, 186 A. 562 (1936).

Most significantly, we have consistently held that in determining whether a defect exists under the municipal liability statute, in cases other than snow and ice, the test is whether the town has exercised reasonable care in keeping the roadways in a reasonably safe condition. See *Rodriguez* v. *New Haven,* supra (crack and uneven condition in sidewalk); *Comba* v. *Ridgefield,* 177 Conn. 268, 413 A.2d 859 (1979) (overhanging tree limb); *Hickey* v. *Newtown,* 150 Conn. 514, 520, 192 A.2d 199 (1963) (sand and gravel on highway); *Chazen* v. *New*

*Britain,* 148 Conn. 349, 170 A.2d 891 (1961) (water drain within street limits); *Bacon* v. *Rocky Hill,* 126 Conn. 402, 11 A.2d 399 (1940) (insecure and dangerous paving). This court has further held that the rationale in cases involving municipalities should be applied in cases brought under the state liability statute because "there is no material difference in the obligation imposed on the state by § 13a-144 and that imposed on municipalities by [General Statutes] § 13a-149." *Donnelly* v. *Ives,* supra, 167; *Baker* v. *Ives,* supra, 299; *Hay* v. *Hill,* 137 Conn. 285, 288, 76 A.2d 924 (1950); *Pape* v. *Cox,* 129 Conn. 256, 259, 28 A.2d 10 (1942); *Falkowski* v. *MacDonald,* 116 Conn. 241, 243, 164 A. 650 (1933). We find no error.

The plaintiff's fourth claim of error is that the trial court failed to charge the jury and excluded evidence on the issue of the defendant's "subduty" to investigate and detect highway problems. The plaintiff relies on *Lamb* v. *Burns,* 202 Conn. 158, 171, 520 A.2d 190 (1987), where we stated that "[t]he defendant's statutory duty to keep highways in repair encompasses a subduty of investigation and detection of highway problems." The plaintiff attempted to introduce evidence (1) that information was readily available to the defendant that should have alerted him to the hazardous conditions existing at the intersection of routes 6 and 25, (2) that the local police could have provided the defendant with information about other accidents that had occurred at this intersection,[8] and (3) of the general

---

[8] The plaintiff argues that the trial court erred in excluding photographs of skidmarks appearing in the southbound lane on routes 6 and 25 and in excluding the testimony of Jeremiah Hunihan, a maintenance foreman with the department of transportation. The skid marks on routes 6 and 25 were allegedly caused by the Androcovich accident that occurred on July 30, 1983, and, as the plaintiff asserts, were still present at the time of the Hall accident one week later. The plaintiff contends that a reasonable investigation of the alleged Androcovich skid marks would have included a call to the local police and would have yielded information about the Androcovich

method used by the defendant for learning of accidents on state roads and assessing whether "highway defects" were a contributing factor of those accidents. The defendant, however, contends that such evidence was irrelevant and improper to the plaintiff's cause of action under the circumstances of this case.

In *Lamb* v. *Burns,* this court addressed, inter alia, whether the trial court had erred in instructing the jury that negligence on the part of the state police could provide a basis for finding the defendant liable under § 13a-144. In *Lamb,* we noted that "the evidence . . . indicate[d] that by custom the commissioner of transportation ha[d] availed himself of the assistance of the state police and that the state police ha[d] assumed such duties"; id., 171; and that the state police had established procedures to notify the department of transportation of any problems on the state highways. Id. Further, we noted that this established custom and procedure was used in *Lamb* to notify the department of transportation of the highway defect. Because the state police were actively involved in detecting and investigating the highway defect, we held: "The jury was entitled to find that neglect or default of the state police in safeguarding the hazardous ice condition . . . provided a basis for the defendant's liability under § 13a-144." Id.

accident which occurred a few days prior to Hanlin's visit to the intersection. Further, the plaintiff claims that Hunihan's testimony concerning the Androcovich accident should have been admitted. Hunihan testified that he would have had more concern with regard to sight line safety at the intersection if he had known of an accident at the intersection one week before August 4, 1983. The photographs and Hunihan's testimony refer to the Androcovich accident that we have previously determined was properly excluded because there was no evidence that the Androcovich accident was caused by a sight line obstruction. Therefore, the trial court did not err in excluding this evidence on the issue of the defendant's subduty to investigate.

In a cause of action based on § 13a-144 the plaintiff must prove, inter alia, "that the authority charged with maintenance of the highway . . . have notice of the defect, actual or constructive, i.e., it must have had actual knowledge of the existence of the defect, or it must have existed for such a length of time that it would have been known in the exercise of reasonable care and a reasonable opportunity have been afforded in which to remedy it." *Falkowski* v. *MacDonald,* supra, 243; *Irish* v. *Ives,* 158 Conn. 116, 117, 256 A.2d 245 (1969); *Shirlock* v. *MacDonald,* supra, 613–14. We have further defined constructive notice as follows: "A possessor of land is charged with constructive notice of a dangerous condition when it is of such a nature and duration that a *reasonable inspection* would have disclosed the risk. . . . Constructive notice is premised on the policy determination that under certain circumstances a person should be treated as if he had actual knowledge so that one should not be permitted to deny knowledge when he is acting so as to keep himself ignorant. . . . Therefore, when a possessor of land fails to make or to have made a *reasonable inspection* which would have disclosed the dangerous condition, his negligent ignorance is, in the eyes of the law, equivalent to actual knowledge." (Emphasis added.) *Warren* v. *Stancliff,* 157 Conn. 216, 219, 251 A.2d 74 (1968).

The defendant's subduty to make a reasonable inspection, i.e., investigation or detection, of a dangerous condition on the highway is therefore a factor to be considered in determining whether the defendant received actual or constructive notice of the alleged defect and had a reasonable opportunity to remedy it. The extent of the duty to inspect varies with the particular circumstances of the case. If the plaintiff can show that the defendant had in fact received actual notice by way of a complaint of a dangerous condition or defect in the highway, such notice imposes a duty

upon its receipt to investigate and take reasonable measures necessary to remedy the claimed hazardous condition or defect. The duty to make a reasonable inspection, i.e., investigation or detection, absent actual notice, depends upon the nature of the defect and the length of time it existed. The circumstances of each case must be examined.

In the present case, the defendant had received actual notice of the alleged defect on July 27, 1983, from Harold Dittman. The plaintiff's witness, John W. Preston, district maintenance manager for the department of transportation, testified that Dittman filed a complaint with the department on July 27, 1983. Dittman's complaint alleged that overgrown brush obstructed the sight line of vehicles attempting to make a left turn on routes 6 and 25. Preston further testified that Hanlin, an employee of the department, conducted a field review of the alleged defect on August 1, 1983. On the basis of this field review, Hanlin recommended that twenty feet of vegetation be cut back for a distance of 600 feet. On August 11, 1983, seven days after Jessica Hall's accident, the department acted on Hanlin's recommendation and cut back the brush. Preston further testified as to the procedures utilized by the department upon receipt of a complaint of an alleged highway defect and the procedures used to remedy a defect. Whether, on all of the evidence, the defendant acted with reasonable care to investigate the defect and had a reasonable opportunity to remedy it were properly questions of fact for the jury.

The plaintiff, however, contends that evidence that would have alerted the defendant of the defect, specifically evidence of prior accidents at the intersection and evidence of the general method the defendant utilizes in determining whether accidents are caused by highway defects, should have been admissible on the issue of the defendant's duty to investigate. As dis-

cussed above, the duty to investigate is a factor for the jury to consider in determining whether the defendant received actual or constructive notice of the alleged defect and an opportunity to remedy it. We agree with the defendant that the evidence the plaintiff was precluded from introducing was irrelevant to the plaintiff's cause of action. There was also evidence concerning the defendant's general method of processing complaints of alleged problems concerning the highways that it was his duty to maintain and repair.

After a review of the trial court's instructions, we conclude that the plaintiff is not correct in maintaining that the trial court did not charge on the defendant's "duty to investigate" pursuant to his request. The plaintiff's request referred to was captioned "Liability-General Discussion" and contained, inter alia, this sentence: "This duty of the Defendant and his employees encompassed the subduty of investigation and detection of highway problems." Although the trial court did not include this sentence in haec verba in its instructions or mention the "subduty of investigation and detection" of highway problems, the trial court, nevertheless, properly charged on the defendant's statutory duty. It told the jury that the defendant's duty was to exercise reasonable care to keep the highways reasonably safe for the reasonably prudent traveler. It also told the jury that "[b]efore the state can be held liable for injuries due to any particular defect claimed here, you must find that the defendant actually knew or in the exercise of reasonable care of one or more of the aforementioned defects of it, knew long before the accident so that in the exercise of reasonable care it had an opportunity to remedy or safeguard." It is not necessary to set out here all that the trial court instructed on to indicate that, fairly viewed as a whole, the jury was told and should easily have understood that what the defendant or his employees reasonably

should have known included reasonable efforts by him to become aware of alleged defects, as well as what would constitute reasonable opportunity to remedy the same. We look at the charge as a whole. It was sufficiently correct in law, adapted to the issues and ample for the guidance of the jury as it fairly presented the case to the jury in such a way that no injustice was done to any party under established rules of law. *Holbrook* v. *Casazza,* 204 Conn. 336, 351–52, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 240, 520 A.2d 1008 (1987); *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20–21, 118 A.2d 798 (1955). In this case, the trial court's instructions were properly patterned, as they should have been, on the relevant statute. See *State* v. *Harrison,* 178 Conn. 689, 698, 425 A.2d 111 (1979). Therefore, there is no reversible error as claimed by the plaintiff.

The plaintiff next claims that the trial court erred in failing to charge the jury in accordance with his request on the defendant's duty to close the highway. This request to charge was stated as follows: "Further, if the defendant knew or ought to have known about a defect which made the highway less than a reasonably safe place to travel, then the defendant was duty-bound to remedy the defect if it could be done, or if not, then to cease the operation of the highway until the defect was remedied. The penalty for refusal to remedy the defect or to close the highway after reasonable notice is liability in damages for the injuries caused by the defect. *Perrotti* v. *Bennett,* 94 Conn. 533, 540 [109 A. 890] (1920)." The trial court did not err in declining to charge the jury in accordance with this request.

The request was defective. "The object in filing a request to charge is to inform the trial court of a party's claim of the applicability of a principle of law to the

case. . . . Our rules provide that each request to charge should contain 'a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply* . . . . A proper request to charge cannot, therefore, under our practice merely be a statement of an abstract proposition of law . . . . " (Emphasis in original.) *Shelnitz* v. *Greenberg,* 200 Conn. 58, 71–72, 509 A.2d 1023 (1986); *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967). This request did not refer to any evidence and was an abstract proposition of law. Further, we note that the request did not fully state the law concerning the defendant's duty in this regard. The defendant's duty to exercise reasonable care to keep the highways reasonably safe is not just to make it reasonably "safe *for travel,*" but to make it such a place "for the reasonably prudent traveler." (Emphasis added.) *Baker* v. *Ives,* supra, 299; see, e.g., *Donnelly* v. *Ives,* supra, 167. The request did not contain this applicable point of law. See, e.g., *Kostyal* v. *Cass,* 163 Conn. 92, 102, 302 A.2d 121 (1972). In addition, the last sentence of this request furnished an additional basis for declining the request. This trial was bifurcated on the issues of liability and damages. The jury charge we are reviewing involves the trial court's charge on liability only. The jury had not been told, nor should they have been, that "liability in damages" was "the penalty for refusal [of the defendant]" to perform his statutory duty, all the elements of which, including sole proximate cause, had not been set out in this request. Finally, the only authority cited in the request was *Perrotti* v. *Bennett,* supra, 540. We do not read *Perrotti* as authority for the submitted request to charge.

Finally, the plaintiff appeals the trial court's granting of the defendant's motion to strike count one of his complaint alleging that the defendant's neglect and

default was the proximate cause of Jessica Hall's injuries and assigns error in the trial court's charge on sole proximate cause. As we have fully addressed this issue in our recent decision of *White* v. *Burns*, 213 Conn. 307, 567 A.2d 1195 (1989),[9] we find no error.

[9] The defendant claims that if the trial court committed any error it was harmless error under the general verdict rule. We note that no interrogatories were submitted to the jury in this case. The defendant asserts that the general verdict rule applies to this case because his general denial to the allegations of the plaintiff's complaint that the highway was "defective" and that the defect was the sole proximate cause of the accident "presented the jury with distinct and severable defenses to the plaintiff's claims." *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 204, 520 A.2d 208 (1987). The plaintiff, however, contends that the general verdict rule is not applicable to this case because: (1) the defendant did not comply with Practice Book § 4013 (a) (1) so as to have properly placed that claim to this court; and (2) the defendant did not present distinct and severable defenses to the plaintiff's claims under General Statutes § 13a-144.

Turning first to the procedural claim, we note that the defendant did not raise the general verdict issue before the trial court, not even in his argument on the plaintiff's motion to set aside the verdict. Despite this, we perceive no prejudice to the plaintiff in addressing this claim and will do so. See *Pepe* v. *New Britain,* 203 Conn. 281, 282, 524 A.2d 629 (1987); cf. *Peck* v. *Jacquemin,* 196 Conn. 53, 62 n.13, 491 A.2d 1043 (1985).

We agree with the plaintiff that the general verdict rule does not apply to this case. Section 13a-144 created a cause of action against the commissioner to recover damages for injuries sustained from a defective highway. " 'A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief.' . . . 'A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action.' " *Burgess* v. *Vanguard Ins. Co.,* 192 Conn. 124, 125–26, 470 A.2d 244 (1984); *Veits* v. *Hartford,* 134 Conn. 428, 434, 58 A.2d 389 (1948).

Recently in *Finley* v. *Aetna Life & Casualty Co.,* supra, 202–204, we said: "The so-called general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982); *Collucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981). The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action; see *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 706, 462 A.2d 376 (1983); or distinct defenses. See *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466,

There is no error.

In this opinion the other justices concurred.

199 A.2d 698 (1964). A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts. *Ziman* v. *Whitley,* 110 Conn. 108, 113–15, 147 A. 370 (1929). . . . The application of the general verdict rule, however, does not depend on the niceties of pleading but on the distinctness and severability of the claims and defenses raised at trial. Where, for example, a plaintiff submits to the jury several different specifications of negligent conduct in support of a single cause of action for negligence, we have held that the general verdict rule does not apply. *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); *McDonough* v. *Lenox Theater Co.,* 143 Conn. 646, 648, 124 A.2d 520 (1956). Our rationale for declining to apply the rule in such circumstances is that 'the various grounds of negligence alleged are often so interlocked as to make it difficult to consider them separately,' and formulating interrogatories to obtain separate findings on the various claims would 'complicate the work of court, jury and counsel.' *Ziman* v. *Whitley,* supra, 115. . . . Likewise, it is the distinctness of the defenses raised, and not the form of their pleading, that is the decisive test governing the applicability of the general verdict rule. *Meglio* v. *Comeau,* 137 Conn. 551, 553–54, 79 A.2d 187 (1951). 'If the defenses are clearly distinct, the fact that one has not been specially pleaded . . . will not prevent the application of the rule.' *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* supra, 466; accord *LaFleur* v. *Farmington River Power Co.,* 187 Conn. 339, 342, 445 A.2d 924 (1982); *Henry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 410, 363 A.2d 86 (1975)."

There is no merit to the defendant's claim that his denials that the highway was "defective" and that the defect was the sole proximate cause of the accident are distinct and severable defenses to the plaintiff's claims. The term "defense" has been said to mean "that which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks." Black's Law Dictionary (5th Ed.). In a word, it is a right asserted by a defendant, arising from his own pleadings, that defeats the plaintiff's cause of action or claim for the remedy demanded by his action. "Severable" means "capable of being divided into legally independent rights or obligations." Webster's Third New International Dictionary. "Distinct" means "characterized by qualities individualizing or distinguishing as apart from, unlike, or not identical with another or others." Id. The defendant's claims are clearly not distinct and severable. Rather, they are mere denials of components of the only cause of action the plaintiff has alleged, i.e., that the defendant has breached the statutory duty imposed upon him by § 13a-144. The general verdict rule does not apply here.