## Heritage Village Master Association, Inc. *v.* Heritage Village Water Company (10410)

Lavery, Landau and Freedman, Js.

Argued January 15—decision released March 23, 1993

*Augustus R. Southworth III,* with whom, on the brief, was *Nancy P. Maxwell,* for the appellant (plaintiff).

*Dean M. Cordiano,* with whom, on the brief, was *Ann McClure,* for the appellee (defendant).

FREEDMAN, J. The plaintiff, as managing agent for the Heritage Village Condominiums (Heritage Village), appeals from the judgment of the trial court rendered, after a jury trial, for the defendant in this action sounding in negligence, products liability and nuisance. The dispute between the parties centers around the quality of water supplied to the plaintiff by the defendant and the plaintiff's contention that the water damaged pipes and plumbing fixtures in its condominium complex. In this appeal, the plaintiff sets forth challenges to (1) the trial court's denial of its motion for partial summary judgment, (2) certain evidentiary rulings by the trial court, (3) the jury instructions, and (4) the trial court's denial of its motion to set aside the verdict as against the weight of the evidence. We affirm the judgment of the trial court.

Heritage Village is a condominium community made up of twenty-four member condominiums in Southbury. The plaintiff, Heritage Village Master Association, Inc., is a corporation that manages the community on behalf of the residents. The defendant, Heritage Village Water

Company, has been the exclusive provider of water to Heritage Village since it was constructed in the mid-1960s. The defendant's water distribution system supplies water to the condominiums via water mains that connect to lateral piping and then to service lines that lead to couplings. Copper tubing then carries the water from the coupling outside each condominium unit and under the concrete slab on which the condominium is built and into the unit.

Beginning in approximately 1977, condominium residents began experiencing leaks in the copper pipes under the slab on which the condominiums were built. To repair the leaks, extensive work is necessary, including ripping up carpeting, jack hammering through the floors and slabs, removing and replacing the leaking pipe and repairing the concrete slabs and interior flooring of the condominiums.

The jury heard extensive and conflicting evidence regarding the cause of the leaks in the copper tubing. The plaintiff's experts opined that the leaks were a result of the pH chemistry of the water. The defendant's experts attributed the leaks to a combination of other factors.

The jury returned a verdict for the defendant. After the plaintiff's motion to set aside the verdict was denied by the trial court, this appeal followed.

I

DENIAL OF MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff first contends that the trial court, *McDonald, J.,* should not have denied its motion for partial summary judgment on the issue of the defendant's liability. The plaintiff argues that the trial court improperly failed to give collateral estoppel effect to

a prior determination of the Connecticut department of public utility control (DPUC) regarding the cause of the leaks in the pipes at Heritage Village. We disagree.

The following additional facts are relevant to the resolution of this issue. At an early stage in the proceedings in Superior Court, the trial court, *O'Brien, J.,* issued an order directing the DPUC to consider the plaintiff's request for injunctive relief requiring an immediate change in the water supplied by the defendant to the residents of Heritage Village. In all other respects, the trial court retained jurisdiction of this action for damages. The DPUC is charged with responsibility for determining the adequacy and efficiency of service rendered by utilities in Connecticut. After a public hearing at which the plaintiff and the defendant, as well as other interested parties, were given an opportunity to present evidence and to cross-examine witnesses, the DPUC issued a decision concluding that "the majority of the pitting of the pipes located at Heritage Village is internal in nature, and the source of this internal corrosion is the chemical composition of the water. In addition, this internal corrosion perforates to the outside of the pipes and causes external corrosion. The amount of external corrosion present on these pipes is exacerbated by the under slab environment of the pipes, due to the improper manner in which the several pipes at Heritage Village were installed by the Developer, and the failure of the [defendant] to properly inspect these installations, in accordance with the Department's regulations. Therefore, the [defendant] has unreasonably failed to provide adequate service to the residents of Heritage Village who have experienced [leaks] . . . ." Accordingly, the DPUC ordered the defendant, inter alia, to increase the alkalinity of the water, or its pH factor, to as near to 8.5 as possible.

The defendant unsuccessfully challenged the decision of the DPUC in an administrative appeal to the Superior Court. In that proceeding, the defendant argued that the DPUC was without authority to make a finding that the pH factor of the water was too low and that it was the cause of the pipe corrosion. The court, *McDonald, J.,* noted that the DPUC had been ordered to hear and determine the issue of whether an immediate change in the water supplied to Heritage Village should be ordered. The court concluded that "[t]his is precisely what the DPUC did and the questioned finding was necessary before such an order could enter."

Before considering the merits of the trial court's ruling on the plaintiff's motion for partial summary judgment, we must first determine whether the denial of that motion is reviewable on appeal. Our courts have held that the denial of a motion for summary judgment is generally not appealable where a full trial on the merits produces a verdict against the moving party. *Gurliacci* v. *Mayer,* 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991); *Greengarden* v. *Kuhn,* 13 Conn. App. 550, 552, 537 A.2d 1043 (1988). The rationale for the rule adopted in *Gurliacci* and *Greengarden* is that a decision based on more evidence should preclude review of a decision based on less evidence. *Gurliacci* v. *Mayer,* supra. That rationale, however, is not applicable here where principles of collateral estoppel could bar the defendant from presenting evidence to dispute the issue of its liability and where the judgment after full trial may, in fact, be based on the same evidence presented in the prior proceeding that yielded a determination in favor of the plaintiff. To conclude otherwise, we believe, would frustrate the policy behind the doctrine of collateral estoppel which seeks to limit a party to a single opportunity to litigate a disputed issue. *Convalescent Center of Bloomfield, Inc.* v. *Department of*

*Income Maintenance,* 208 Conn. 187, 194, 544 A.2d 604 (1988); *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983). This conclusion follows our recent determination that "the strict application of our rules of practice has yielded to a more common sense application when confronted with the implications of the doctrine of collateral estoppel." *Carnese* v. *Middleton,* 27 Conn. App. 530, 537, 608 A.2d 700 (1992). We therefore consider the merits of the plaintiff's claim.

"Where an issue of ultimate fact (1) was fully and fairly litigated in a prior [proceeding] between the parties, (2) was actually decided . . . in that prior [proceeding], and (3) was necessary to the judgment rendered in the prior [proceeding], that factual determination may be given collateral estoppel effect in a subsequent action between the parties." Id., 540–41. Although we afford appellate review to the plaintiff's claim that the trial court should have granted its motion for partial summary judgment, we conclude that principles of collateral estoppel did not bar further litigation of the issues of the defendant's liability for two reasons.

First, even if the DPUC decision is interpreted to have resolved the issue of the cause of the leaks in question, liability is predicated on more than a determination of cause in fact. In both a negligence claim and a product liability claim, a plaintiff must establish more than that the defendant's conduct was a cause of the plaintiff's injuries in order to establish the defendant's liability. See generally D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) §§ 29, 32, 33, 34 (negligence) and §§ 81A, 81E (product liability). One such element of liability is foreseeability as it relates to causation. Id. In its decision, however, the DPUC specifically and properly disavowed any deter-

mination of the issue of foreseeability as it relates to causation.[1] Because not all of the issues necessary to establish the defendant's liability in this proceeding were "actually decided" by the DPUC in the prior proceeding, the trial court properly refused to grant the plaintiff's motion for partial summary judgment. See *Carnese* v. *Middleton,* supra.

Second, a determination of the issue of causation in the tort law sense was not necessary to the resolution of the issues before the DPUC. The question before the DPUC was whether the DPUC should order a change in the chemistry of the water supplied by the defendant to Heritage Village. While it was necessary for the DPUC to determine that the chemical makeup of the defendant's water played *some* role in its customers' problems, and hence that the water company was not fulfilling its statutory duty to provide adequate service, it was not required to determine that the defendant's conduct was "a *substantial factor* in bringing about the plaintiff's injuries"; (emphasis added) *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 4, 444 A.2d 211 (1982); in order to reach its conclusion. The plaintiff was not entitled to use the doctrine of collateral estoppel to prevent the defendant from contesting an issue of liability where the critical fact determined in the prior proceeding was not necessary to its conclusion. See *Carnese* v. *Middleton,* supra, 541–42.

---

[1] In its decision, the DPUC noted: "There is a paucity of evidence in the record as to whether the [Heritage Village Water] Company could have reasonably foreseen that the water it was providing to its customers could, when combined with other factors, result in the pitting corrosion problems. However, it is the determination of the [DPUC] that the statutory mandate that a public utility company provide adequate service to its customers . . . is not based upon a standard of whether or not the Company could have reasonably foreseen that its actions, or its failure to act, would not accomplish this mandate, but rather upon whether or not adequate service is in fact being provided."

"The doctrine of collateral estoppel is a limited one. Collateral estoppel can be applied only to bar relitigation of facts that were formally put in issue and ultimately determined by a valid, final judgment." Id., 542. Because the DPUC decision did not foreclose the defendant from disputing any issues in this case, the trial court properly denied the plaintiff's motion for partial summary judgment.

## II

### EVIDENTIARY RULINGS

The plaintiff next challenges three evidentiary rulings of the trial court. Specifically, the plaintiff claims that (1) the entire DPUC decision should have been admitted as evidence, (2) a representative of the defendant should not have been permitted to testify concerning the lack of complaints about leaks from other customers, and (3) the defendant should not have been permitted to present the testimony of an expert witness, Hector Campbell, for the purpose of impeaching the credibility of a prior witness presented by the plaintiff. We are not persuaded.

Our analysis of these challenges to the evidentiary rulings of the trial court is guided by a well settled standard of review. "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion." *Hall* v. *Burns,* 213 Conn. 446, 451, 569 A.2d 10 (1990); *Munson* v. *United Technologies Corporation,* 28 Conn. App. 184, 189, 609 A.2d 1066 (1992).

### A

The plaintiff argues that the entire thirty page decision of the DPUC should have been admitted by the trial court, notwithstanding its hearsay nature, pur-

suant to either the public records or the business records exceptions to the hearsay rule. We disagree.

As the trial court recognized, "[i]n the absence of testimony that the conclusion [reached in the DPUC decision] was based upon that agency's own testing or examination of the pipes and water, the report was essentially the DPUC's acceptance of the plaintiff's expert testimony before it." In order to be admissible as a public record or a business record, however, the information contained in the proffered document must be based on the personal knowledge of the declarant. *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 38, 404 A.2d 889 (1978); *D'Amato* v. *Johnston,* 140 Conn. 54, 59–60, 97 A.2d 893 (1953). Unless a prior adjudication satisfies the usual requirements of res judicata or collateral estoppel, a determination of a fact in one case is not admissible in another case to prove the same fact. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.15.4. The final administrative determination, therefore, was hearsay evidence that does not fall into any recognized exception. Id. Accordingly, the trial court properly excluded the admission of the DPUC decision.[2]

## B

The plaintiff next claims that the trial court should not have permitted Anthony Zibello, the defendant's general manager, to testify that he had not received any complaints of leaks from customers outside of the

---

[2] In addition, the trial court supported its ruling on the admissibility of the DPUC report by noting that since the contest at trial between the experts was for the jury to resolve and since the report was not based on any independent investigation by the DPUC, "the likelihood of confusion was another factor leading the court to deny the report's admissibility." The trial court's conclusion that the proffered evidence should be excluded because of its likelihood to confuse or mislead the jury was not an abuse of discretion. *Hall* v. *Burns,* 213 Conn. 446, 466, 569 A.2d 10 (1990).

Heritage Village complex who received the same water that the defendant supplied to Heritage Village. The defendant sought to admit the testimony on the issue of whether the defendant had notice of any danger associated with its product and to disprove the plaintiff's claim that the defendant's product injured, or presented the danger of injury to, the plaintiff's property. The plaintiff argues, however, that this evidence permitted the jury to consider nonverbal, assertive conduct which is inadmissible hearsay. We disagree.

Evidence of conduct may be hearsay. "If the conduct is assertive in nature, that is, meant to be a communication . . . it is treated as a statement, and the hearsay rule applies." C. Tait & J. LaPlante, supra, § 11.2. Customer silence regarding the quality of water supplied by the defendant, however, is not assertive conduct. "Evidence of nonassertive conduct by persons not in privity with the parties is not violative of modern conceptions of the hearsay rule and, in the context of this case, had significant probative value and inherent guarantees of trustworthiness without attendant prejudice to the defendant." *State* v. *McCarthy,* 197 Conn. 166, 173, 496 A.2d 190 (1985). Accordingly, the trial court did not abuse its discretion in admitting evidence of the lack of complaints by other customers regarding the defendant's water supply.

## C

The plaintiff's final evidentiary claim centers on the testimony of Hector Campbell. In its cross-examination of the plaintiff's expert, James Meyers, the defendant asked Meyers about the "carbon film theory," which postulates that in some manufacturing processes copper pipes are left with a residue of carbon film that in later use can lead to pitting of the interior of the pipes. Meyers stated that the theory had been repudiated by its originator, Hector Campbell, in a conversation

between Meyers and Campbell two years before. The defendant later called Campbell as a witness to establish that he had never repudiated his carbon film theory and that he had never had such a conversation with Meyers.

At trial, the plaintiff objected to Campbell's testimony on the ground that the defendant had failed to identify Campbell as an expert witness who was expected to testify at trial. On appeal, the plaintiff claims other grounds for its exclusion. We will not review the plaintiff's claim, however, because these objections to the admissibility of the evidence were not raised in the trial court. *Raino* v. *Supermarkets General Corporation,* 28 Conn. App. 56, 59, 609 A.2d 1047, cert. denied, 223 Conn. 924, 614 A.2d 825 (1992); *O & G Industries, Inc.* v. *Mizzoni,* 23 Conn. App. 19, 23, 578 A.2d 672 (1990).

## III

### Jury Instructions

The plaintiff next raises three challenges to the trial court's instructions to the jury. Specifically, the plaintiff claims that (1) the court should have instructed the jury on breach of statutory duty, as set forth in its written request to charge, (2) the court should have instructed the jury on the law of nuisance, as set forth in its written request to charge, and (3) the court should not have instructed the jury on the concept of intervening cause. We are not persuaded.

### A

The plaintiff claims that the trial court should have instructed the jury on the concept of negligence per se based on the breach of statute and agency regulation in accordance with its request to charge.[3] We disagree.

---

[3] The plaintiff submitted the following request to charge on the issue of "breach of statutory grant": "You must also find The Water Company lia-

"The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citations omitted.) *Tomczuk* v. *Alvarez,* 184 Conn. 182, 190, 439 A.2d 935 (1981); *State* v. *Commerford,* 30 Conn. App. 26, 32, 618 A.2d 574, cert. denied, 225 Conn. 903, 610 A.2d 177 (1993).

ble if you find the violation of a statute, ordinance or administrative regulation. In this case, HVMA is claiming that The Water Company violated the statutory grant which states, in part, that The Heritage Village Water Company has 'all powers and privileges granted by the general statutes to water companies and to corporations organized under the general statutes, for the purpose of supplying water for public, domestic and other uses within the territorial limits hereinafter designated.' Connecticut law provides that a water company is regulated by The Department of Public Utility Control. HVMA claims that the Heritage Village Water Company violated the regulations of the DPUC. Specifically, HVMA claims that the following Regulations have been violated: '(1) Section 16-11-62 (5)—The utility shall, with the cooperation of the customer, make an adequate inspection of the customer's service pipe in order to determine that it complies with company requirements.

" '(2) Section 16-11-79—The design and construction of the utility's water plant shall conform to good standard engineering practice, including the minimum standards of the American Water Works Association. It shall be designed to make reasonable provisions for the company's water supply requirements for a period of at least fifteen years and operated so as to provide reasonably adequate and safe service to its customers and shall conform to the requirements of the state department of health with reference to sanitation and potability of water.'

"If you find that the Defendant has violated one or more of these regulations and that the residents of Heritage Village are within the class of people intended to be protected by the regulations then you must find that The Water Company has breached its statutory grant and you must find for HVMA. . . ." (Citations omitted.)

The following supplemental request to charge on the issue was also submitted to the trial court: "A private water company such as the Heritage Village Water Company has a legal duty to provide water which is reasonably fit for its intended purposes. This means that the Water Company must furnish water to its customers which is not only potable, and safe for human

Under this standard of review, we conclude that the trial court properly discharged its duty to instruct the jury in a manner calculated to give a clear understanding of the issues presented for their consideration.

The plaintiff correctly points out that the violation of a valid administrative regulation constitutes negligence per se. *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 608, 266 A.2d 382 (1969). The administrative regulation principally involved here required the defendant to "provide reasonably adequate and safe

consumption, but is also non-corrosive to the pipes, fixtures, and containers used to convey it. The water provided by the Water Company must pass safely through the service pipes, to the consumer. If the water provided by the Water Company is not fit to pass safely through the service pipes, then that water is not fit for its intended purposes. . . .

"In order for water, as a product, to be defective and unreasonably dangerous, it is not necessary that the Plaintiff prove that the water was unreasonably dangerous to the person or health of the customer. It is also defective if it is unreasonably dangerous to the property of the customer, and causes injury or damage to the customer's property. . . .

"I charge you that while water may be safe for human consumption, the quality of the water is not adequate if it causes leaks which result in a loss of service, and damage to pipes and the personal property of the customers. . . .

"It is the responsibility of a water company to take whatever steps are reasonably required to assure that the personal property of its customers, when exposed to its water, is not continually damaged. . . .

"The regulations of the Department of Public Utility Control require that the Water Company exercise reasonable diligence to furnish an adequate supply of water to its customers. You have heard testimony from witnesses for both parties that water which corrodes the distribution system is not adequate. You have also heard testimony from experts for both the Water Company and the Master Association that the water supplied by the Water Company to the residents of Heritage Village corrodes the soft copper tubing at Heritage Village. If you conclude that the Heritage Village Water Company water is corroding the pipes at Heritage Village, then based on the testimony you must find that the Water Company is not supplying adequate water and has breached its statutory grant. You must, therefore, find for the Master Association and award damages accordingly. . . ." (Citations omitted.)

service to its customers." The trial court, however, properly fulfilled its duty to instruct on this principle of law by instructing the jury as follows: "The regulations of the Department of Public Utility Control require that the water company exercise reasonable diligence to furnish an adequate supply of water to its customers. Thus, if you find that the Heritage Village Water Company water was corrosive and if you find that the water company did not take reasonable steps to furnish an adequate supply of water, you have found for the Master Association on the negligence theory of product liability." The court's instructions therefore fairly covered the points of law raised in the plaintiff's request to charge.

## B

The plaintiff next claims that the trial court should have instructed the jury on the law of nuisance in accordance with its request to charge.[4] We disagree.

___

[4] The plaintiff submitted the following request to charge on the issue of "nuisance": "In Count III of its complaint, HVMA claims that the corrosive water supplied to it and the resulting damage constitutes a nuisance. The question in this case of whether the water is a nuisance is a question of fact for you to decide. If the natural tendency of supplying corrosive water is to create danger and inflict damage upon property, it may properly be found a nuisance as a matter of fact. And in the case before us, you are to determine, as a matter of fact, whether or not the defendant supplied water of such a quality as would unnecessarily expose the residents of Heritage Village or their property to damage.

"To establish a nuisance, the plaintiff must prove certain things. The first is that the condition was such that, in its very nature, it was likely to cause danger and inflict injury. A mere tendency to create danger is not enough. The danger must be actually appreciable, a danger which would strike the attention of an ordinarily prudent person because of facts which he knew or which, in the exercise of a reasonable observation and diligence, he should have known.

"The second is that the condition was a continuing one. By that I mean that it must be more than a temporary condition springing from some particular act or failure to act on the part of the defendant, that it must have continued in existence for some appreciable length of time.

"A third requirement which must be met is that the use made of the water by the defendant was unreasonable or unlawful. There is no doubt that the

The third count of the plaintiff's amended complaint sought recovery based on a claim of nuisance. "[T]he trial court's withdrawal of the nuisance claim from the jury was tantamount to a directed verdict on that issue. For this reason, in reviewing the court's refusal to charge the jury on the nuisance claim, and its subsequent denial of the plaintiff's motion to set aside the verdict based on that refusal, this court considers all the evidence, including reasonable inferences, in the light most favor-

---

defendant was making a lawful use of the water, and you need give no thought to that requirement; but you must ask yourselves whether in supplying corrosive water, if you should determine that to be the case, the use they were making of it was a reasonable one. You must determine whether the harm which came to the plaintiff was one which the condition had a natural tendency to produce.

"If the plaintiff has proved to you by a fair preponderance of the evidence the existence of all these circumstances: that the condition on the defendant's property was such that, in its very nature, it was likely to cause danger to and inflict damage upon the property of the plaintiff; that the condition was a continuing one; that the use the defendant was making of his property was not a reasonable one; and that the harm which came to the plaintiff was one which the condition had a natural tendency to produce, the plaintiff has established the existence of a nuisance. On this phase of the case it does not matter whether the condition was one which in its natural state constituted such a nuisance or one which, originally not unsafe for persons coming near it, became a nuisance by the negligence of the defendant, that is, his failure to use the care of an ordinarily prudent person to maintain the safeguards he had placed about it.

"If you find that The Water Company knew of the condition of the water and the damage it caused, but persisted in letting its water into the service pipes with knowledge of the nuisance thereby created and continued, you must find that The Water Company created a nuisance by supplying corrosive water and is liable for the injuries sustained.

"If you find that there was a nuisance upon the defendant's property for the creation or maintenance of which he was responsible, your final question will be, did that nuisance cause the damages suffered by the plaintiff; that is, in brief, was the nuisance a substantial factor in bringing them about.

"If you conclude that there was a nuisance, that the defendant was responsible for its existence or maintenance, that the harm to the plaintiff was such as the nuisance was likely to produce, and that the nuisance was the cause of that harm, then you should render a verdict for the plaintiff."

able to the plaintiff." (Internal quotation marks omitted.) *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 182–83, 527 A.2d 688 (1987).

The plaintiff claims that the jury could have found the defendant liable in nuisance because its evidence showed that the defendant provided water to Heritage Village of a sufficiently low pH level that, in combination with dissolved carbon dioxide, was corrosive to the plaintiff's copper pipes, causing injury to the plaintiff's use and enjoyment of its property. "Nuisance is a word often very loosely used; it has been not inaptly described as 'a catch-all of ill-defined rights.' " *Gonchar* v. *Kelson,* 114 Conn. 262, 271, 158 A. 545 (1932). "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' . . . There is general agreement that it is incapable of any exact or comprehensive definition." W. Prosser & W. Keeton, Torts (5th Ed.) § 86. In order to prevail on a claim of nuisance, the plaintiff must establish that "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the [defendant's] land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damages." *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889 (1978); *Green* v. *Ensign-Bickford Co.,* 25 Conn. App. 479, 490, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991). We conclude that the evidence, taken in the light most favorable to the plaintiff, was insufficient to meet the requirements of the first and third elements of a nuisance claim.

"A nuisance . . . describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property." *Quinnett* v. *Newman,* 213 Conn. 343, 348, 568 A.2d 786 (1990). "There must

be some dangerous or noxious characteristic to the condition before it can be termed a nuisance." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) § 128; see *Butzgy* v. *Glastonbury,* 203 Conn. 109, 121, 523 A.2d 1258 (1987). Although the existence of a nuisance is generally a question of fact, we conclude that the condition complained of here did not constitute a nuisance as a matter of law. The water supplied to the plaintiff by the defendant was potable water, within generally accepted ranges of pH. There is no natural tendency of such water to create danger or inflict injury. It is undisputed that the water here met governing standards regarding its use for purposes of human consumption. It could not reasonably be concluded that the water supplied by the defendant had a natural tendency to create danger or inflict injury on person or property where the danger would exist only as a result of an unusual combination of circumstances contributing to the result. *Hassett* v. *Palmer,* 126 Conn. 468, 476, 12 A.2d 646 (1940).

The evidence was also deficient to permit a jury instruction on the law of nuisance in another respect. Our case law requires sufficient proof of a defendant's connection to a particular parcel of property and the nature of the defendant's use of his property, before nuisance liability can be imposed. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* supra, 183–84. This case, however, was not about the defendant's use of its property, but rather concerned its conduct in supplying water to the plaintiff.

The evidence did not support an instruction on the nuisance count of the plaintiff's complaint. The trial court, therefore, properly refused to instruct the jury as requested by the defendant.

C

The plaintiff's last challenge to the court's instruction to the jury concerns the jury instruction on inter-

vening or superseding cause. The plaintiff does not challenge the content of the superseding cause instruction but instead argues that insufficient evidence was introduced to warrant such an instruction. We disagree.

"The function of the doctrine [of superseding cause] is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force." *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 24, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985). The doctrine exonerates a negligent party from liability by shifting the causation element entirely elsewhere. Id., 25. "The circumstances under which this shifting may take place have been well-defined in our case law. Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it 'so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury . . . .' " Id., quoting *Corey* v. *Phillips,* 126 Conn. 246, 255, 10 A.2d 370 (1939).

Here, both parties presented extensive expert testimony regarding the causes of the leaks in the water pipes. The plaintiff's experts linked the copper piping failures to the corrosive effects of the water, concluding that the low pH of the water, along with other chemicals present, caused the leaks. The defendant's experts agreed that some pipes at Heritage Village showed evidence of interior corrosion, but they disputed that the water quality had initiated the corrosion responsible for the leaks or that it was ultimately responsible for the leaks in the pipes. Those experts identified factors other than the defendant's water, including external corrosion, stress, crimps and bends, and the quality of the copper tubing, as the cause of

the leaks. On the basis of the testimony presented, the jury was entitled to find that some, most or all of the leaks were due to causes other than corrosive water, notwithstanding any pitting to the interior of the pipes caused by the defendant's water. Under these circumstances, the court properly instructed the jury to consider the principle of superseding cause.

## IV

The plaintiff's final claim is that the verdict was against the weight of the evidence. The plaintiff's entire argument on this point consists of two sentences: "The overwhelming weight of the evidence and testimony established beyond doubt the Water Company's liability for a majority of the leaks. Even viewing the verdict in the light most favorable to the Water Company, it is clear the trial court erred in failing to grant the motion to set aside the verdict." We do not agree.

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . The supervision which a judge has over the verdict is an essential part of the jury system. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. . . . The court has a duty to set aside the verdict where the jury's action is so unreasonable as to suggest that it was the product of such improper influences. . . . A verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury." (Citations omitted;

internal quotation marks omitted.) *Palomba* v. *Gray*, 208 Conn. 21, 23–24, 543 A.2d 1331 (1988).

Here, the jury sifted through vast amounts of conflicting expert opinion. The parties presented different theories as to the causation and foreseeability of the leaks in the copper piping. The trial court chose not to upset the jury's verdict. "Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness . . . since the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence." (Citations omitted.) Id., 24–25. We find no abuse of discretion in the trial court's action.

The judgment is affirmed.

In this opinion the other judges concurred.