[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
This matter comes before the court on a Motion for Summary Judgment.
On August 21, 1991, the plaintiffs, Lewis Busconi and Lion Construction Co., Inc. ("Lion Construction") filed a revised complaint for strict foreclosure of the judgment lien against the defendants, Ronald DiGhello, By-the-Sea, Inc., ("By-the-Sea"), Luxury Property, Inc. ("Luxury"), Brandy, Incorporated — Milford ("Brandy"), Millionaire, Inc. ("Millionaire"), and Millstone Country Club, Inc. ("Millstone"). The following facts are derived from the plaintiffs' and defendants' exhibits which include the rulings and decisions of the United States District Court, District of Connecticut, relevant to the present parties. Busconi and Lion Construction are, essentially, the same entity. The corporation defendants, By-the-Sea, Luxury, Brandy, Millionaire and Millstone are closely held corporations in which DiGhello is the sole or majority shareholder. The plaintiffs and defendants were at one time partners in a land development project which included a golf course, condos and a marina. Ultimately, there was a falling out among the parties and each took legal action against the other. The judgment lien which the plaintiffs seek to foreclose arises out of a judgment which was obtained in the United States District Court, District of Connecticut, on May 16, 1988.
On March 22, 1984, arbitration between DiGhello, his four corporate entities, and Busconi and Lion Construction commenced under order of the United States District Court, District of Connecticut, Zampano, J. Only DiGhello and By-the-Sea were "named" defendants. The other corporations were determined to be parties to the arbitration pursuant to an agreement among the parties, CT Page 6211 which mandated the arbitration. The arbitration was pursuant to the Federal Arbitration Act, 9 U.S.C. 67; 1, et seq., and in accordance with an arbitration clause in the parties' written agreement. On June 30, 1987, the arbitration panel awarded approximately $8,000,000 to the plaintiffs. On November 10, 1987, the United States District Court for the District of Connecticut, Zampano, J., confirmed the award and entered judgment in favor of the plaintiffs.
The defendants objected to the district court's confirmation of the award on the ground that the decision bound Luxury and Brandy, who were not "name defendants", in the arbitration and the defendants argued that the arbitration panel did not have jurisdiction over those corporate entities. The defendants appealed the district court's confirmation of the panel's award and, on May 16, 1988, the United States Court of Appeals for the Second Circuit affirmed the decision of the District Court. Further, on June 23, 1988, the Second Circuit Court of Appeals denied a petition for rehearing of the case.
On March 2, 1990, the plaintiffs placed a judgment lien, arising from the district court's judgment, on the disputed property. In August 1991, the plaintiffs commenced the present action to foreclose that lien.
On December 16, 1994, the defendants, Luxury and Brandy, each filed an answer and four special defenses. In the first special defense, the defendants allege that they were never served with process in any federal action. In the second special defense, the defendants allege that they were not a party to any arbitration between the plaintiffs in the present case. In the third special defense, the defendants allege that any judgment as to them was null and ineffectual. In the fourth special defense, the defendants allege that the award was not confirmed by any court with in personam jurisdiction over them. The defendants argue that, as a result, the federal judgment and resulting lien are invalid because the judgment binds parties over whom the federal court did not have jurisdiction.
On March 18, 1994, the plaintiffs filed a reply to the special defenses, asserting that they are barred by the doctrines of res judicata and collateral estoppel.
On March 29, 1994, the plaintiffs filed a Motion for Summary Judgment on the complaint with a memorandum of law and several CT Page 6212 exhibits. On April 18, 1994, the defendants filed a memorandum in opposition to the plaintiffs' Motion for Summary Judgment with three exhibits.
The purpose of summary judgment is to determine if the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Spencer v. Good Earth Restaurant Corp. ,164 Conn. 194, 197, 319 A.2d 403 (1972). "Summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full dress trial." United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 375, 260 A.2d 596 (1969). "In ruling on a motion for summary judgment the court's function is not to decide the issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495,500, 535 A.2d 793 (1988). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Burns v. HartfordHospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984).
In their memorandum in support of the motion, the plaintiffs argue that collateral estoppel applies when privity exists between the parties and the parties had a full and fair opportunity to litigate the issues. The plaintiffs argue that the arbitration produced 38 volumes of transcripts and over 300 exhibits. They argues that the arbitration panel expressly found that: Luxury, Brandy, Millionaire, DiGhello, and By-the-Sea either executed or directly benefited from the underlying agreements between the parties; "all of these corporations are clearly owned, dominated and controlled by DiGhello" and; "DiGhello dealt with and through those various entities as their alter ego." The plaintiffs further argue that the present issue, whether Brandy and Luxury are bound by the arbitration, is identical to what was briefed and argued before the United States District Court, District of Connecticut, Zampano, J. Further the plaintiffs argue that the Second Circuit Court of Appeals affirmed the district court and denied a rehearing on the matter. Lastly, on February 24, 1994, the district court, Zampano, J., denied a motion for an order enjoining the defendants and related entities from interfering with efforts to enforce a judgment and execution issued by the United States District Court for the District of Connecticut, Zampano, J. The court stated:
"[T]he applicability of the doctrines of collateral CT Page 6213 estoppel, and to some extent res judicata, is clear for an appropriate ruling by the state court. Therefore, in respect for the principle of comity, the motion for injunctive relief . . . is denied without prejudice."
(Plaintiffs' Exhibit B).
In their memorandum in opposition to the motion, the defendants argue that the federal court did not have jurisdiction over Luxury and Brandy. The defendants argue further that the issue in federal court was whether the arbitration award was valid because it included non-parties. Therefore, the defendants argue that the present issues are not identical. They argue that the judgment lien is invalid and invalidity of a lien is a valid defense in a foreclosure action. Further, the defendants argue that the validity of a judgment lien is a question of fact. Additionally, the defendants argue that collateral estoppel cannot apply in the present case because the issues and the parties are different.
 "Claim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. State v. Ellis, 197 Conn. 436, 466, 497 A.2d 974 (1985). `The concepts of issue preclusion and claim preclusion are simply related ideas on a continuum, differentiated, perhaps by their breadth, and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' (Internal quotation marks omitted.) Id., 464-465. The subtle difference between claim preclusion and issue preclusion has been so described. `[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit.'"
(Citations omitted.) Scalzo v. Danbury, 224 Conn. 124, 127,617 A.2d 440 (1992). Res judicata prohibits "pursuit of any claims relating to the cause of action which were made or might have been made. . . . In contrast, [collateral estoppel] prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." Id. "For an issue to CT Page 6214 be subject to collateral estoppel, it must be fully an fairly litigated in the first action." (Citation omitted.) Virgo v.Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988). "It also must have been actually decided and the decision must have been necessary to the judgment." (Citation omitted.) Id. Further, both res judicata and collateral estoppel require that there be a valid final judgment. Zieger v. Village Brook Plaza LimitedPartnership, 224 Conn. 543, 545-46, 620 A.2d 440 (1992).
 "What factual grouping constitutes a transaction, and what grouping constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit. . . . The rule applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action, or to seek remedies or forms of relief not demanded in the first action."
(Internal quotation marks omitted; citations omitted.) Duhaime v.American Reserve Life Ins. Co., 200 Conn. 360, 364, 65,511 A.2d 333 (1986). "The strict application of our rules of practice has yielded to a more common sense application when confronted with the implications of the doctrine of collateral estoppel." HeritageVillage Master v. Heritage Village Water, 30 Conn. App. 693, 698,622 A.2d 578 (1993), citing Carnese v. Middleton, 27 Conn. App. 530,537, 608 A.2d 700 (1992).
Collateral estoppel may be asserted against those in privity with the original parties. Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 596 A.2d 414 (1991). "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding." Id., 304. "There is no bright line rule whether or not corporate officers or shareholders are in privity with their corporation for res judicata purposes." (Internal quotation marks omitted; citations omitted.) Commissioner of Environmental Protection v.Connecticut Building Wrecking Company, Inc., 227 Conn. 175, 93,629 A.2d 1116 (1993). "The general rule [is] that a judgment in an action to which a corporation is a party had no preclusive effects on a person who is an officer, director, stockholder, or member of CT Page 6215 a non-stock corporation. . . ." (Internal quotation marks omitted.) Id., 194. The exception to that rule is for closely held corporations. Id. "[When] one or a few persons hold substantially the entire ownership in [the corporation], the judgment in an action . . . against the corporation . . . is conclusive upon the [holder of ownership in it] as to issues determined therein [if,] in an action . . . against the corporation . . . [the holder of its ownership in it] actively participated in the action on behalf of the corporation." Id., quoting the Restatement (Second), Judgments 59 (30(a)) (1982).
In a 17 page memorandum, the federal district court, Zampano, J., discussed at length the arbitration award and the parties that are bound by it. The court analyzed the arbitration agreement between the parties which ultimately led to the award and the parties' submission of the issues to arbitration. The court stated, "the arbitration agreement, far from manifesting an exclusion of DiGhello's four corporate entities [which include Luxury and Brandy], conclusively confirms the parties' intention to include these non-signatories in the arbitration proceedings." Moreover, the court found that "not only the contract to arbitrate, but also the parties' submissions of the issues, expressly empowered the Arbitration Panel to determine the rights, obligations and liabilities of the four corporate entities whose activities played major roles in the grievance presented for resolution." The court affirmed the arbitrators' finding that "the four corporate entities were `clearly intertwined' in the project," that they "executed or directly benefited from the parties' agreements," that they were "clearly owned, dominated and controlled" by DiGhello and that they were DiGhello's alter egos. These findings were affirmed on appeal by the second circuit.
The issues of whether Luxury and Brandy were bound by the arbitrators' decision, and whether the judgment lien is valid because Luxury and Brandy were no subject to the arbitrators' jurisdiction, are the same. The exhibits submitted by both parties, which include the arbitration ruling, the judgment of the District Court and the appellate briefs of both parties, show that this issue was fully and fairly litigated and finally decided. Because this issue was decided by the federal courts, collateral estoppel bars the special defenses which allege that the judgment lien is invalid.
"A judgment lien is a sort of statutory mortgage, . . . a perfected and permanent lien unconditional in its nature, unlimited CT Page 6216 as to time, and subject to no further regulations except as to redemption and foreclosure.'" (Citations omitted.) Vaccaro v.Snyder, 3 Conn. L. Rptr. 339, 340 (March 15, 1991, Burns, J.). "Historically, the defenses available in a foreclosure action have been limited to payment, discharge, release, satisfaction or invalidity of a line." Citicorp Mortgage v. Lutschaunig,8 CSCR 891 (August 12, 1993, Leheny, J.), citing Peterson v. Weinstock,106 Conn. 436, 441, 138 A. 433 (1927). Because the defendants have not alleged any other valid defense to the foreclosure of the plaintiff's judgment lien, summary judgment may enter.
Curran, J. State Trial Referee