[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties were married on November 4, 1961; therefore, on the return date, June 13, 1995, they had been married almost 35 years. There are presently no minor children issue of the marriage. Both parties are in their late 50's, unemployed and receiving social security disability income payments. Mr. Molloy also has a pension from his prior employment as an ironworker. His net weekly income from both sources is $568.00 while Mrs. Molloy's net weekly income from social security disability is $139.00. Their only real asset is a mobile home located in East Hartford, which both valued at $60,000.00 on their financial affidavits, and which is free of encumbrances.
The only issues between the parties are the extent of Mr. Molloy's continuing duty to support Mrs. Molloy, and whether or not Mr. Molloy should have some share in the jointly-owned mobile home.
The court has considered all of the criteria of Sections46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "This court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, CT Page 7823 313-14 (1991).
Determining the extent of Mr. Molloy's continuing duty to support Mrs. Molloy is complicated by questions raised as to her present earning capacity. Counsel for both parties provided helpful memoranda on the issue of what inference, if any, this court may draw from the Social Security Administration's determination that Mrs. Molloy is entitled to social security disability income. In Heritage Village Master Association, Inc.v. Heritage Village Water Company, 30 Conn. App. 693, 701 (1993), the trial judge's exclusion from evidence of a report of an administrative agency in a tort action was upheld. "Unless a prior adjudication satisfies the usual requirements of res judicata or collateral estoppel, a determination of a fact in one case is not admissible in another case to prove the same fact. . . . The final administrative determination, therefore, was hearsay evidence that does not fall into any recognized exception." Id. (Citation omitted.) Mr. Molloy argues that this court can give no effect to the social security determination of Mrs. Molloy's eligibility. On the other hand, in a dissolution action the Appellate Court held that "(t)he earning capacity of this defendant as of the time of the hearing on his motion was minimal, given his award for an industrial disability". Bronsonv. Bronson, 1 Conn. App. 337, 340 (1984) (emphasis added). The fact that Mrs. Molloy is receiving social security disability income is revealed by her financial affidavit. Surely this court can also take notice of the federal statutory definition of disability under the Social Security Act of 1935, as amended; viz, "inability to engage in any substantial gainful activity",42 U.S.C.A. Section 423(d)(1)(A), without violating the rule set down in the Heritage Village case. Moreover, the court's own observations of Mrs. Molloy during the trial of this matter support a conclusion that her earning capacity, if any, is extremely limited.
It should be noted that Mr. Molloy receives income from the same source and, like Mrs. Molloy, his claim of no earning capacity was supported by nothing other than his own testimony. While he argues that his earning capacity is not in issue, it must be in any dissolution action, where the court may base its orders not only on a party's actual income but on his earning capacity as well.
After almost 35 years of marriage, the court believes that the parties' income should be equalized insofar as is possible CT Page 7824 and necessary upon the dissolution of their marriage. Continuation of the pendente lite order of $150.00 weekly payable by Mr. Molloy to Mrs. Molloy will substantially achieve that effect when the housing and medical costs of the parties are taken into consideration.
Although the parties separated briefly in 1986 and sold their jointly-owned home in East Hartford, Mr. Molloy soon took up residence again with Mrs. Molloy in the mobile home which she bought with her proceeds of that sale. That residence has always been jointly-owned by the parties, and Mr. Molloy lived there with Mrs. Molloy for eight years, contributing at least equally to the expenses of the home. In addition, the mortgage on the home was paid off out of the proceeds of a worker's compensation settlement which Mr. Molloy received in 1993 and 1994. Mr. Molloy also spent considerable money from that settlement ($9-12,000) on improvements to the home. In these circumstances, why should he not receive an equal share in the property?
Mrs. Molloy argues that Mr. Molloy received and used for his own purposes a disproportionate share of the very sizable worker's compensation payments he had received in 1993 and 1994. It is by no means clear from the evidence that Mrs. Molloy's claim is accurate. These payments totaled over $300,000.00, and virtually all of the funds were gone by the end of 1994. All but $56,000.00 had been placed into accounts held in both parties' names jointly. Mrs. Molloy's testimony as to the uses made of the funds was belied by the bank records and otherwise unreliable. For example, she testified that her memory is affected by medication that she presently takes for various illnesses. In addition, in a financial affidavit she signed and swore to on February 28, 1996, and which the court relied on in entering a pendente lite restraining order on the same date, Mrs. Molloy swore that she "will receive a retroactive check from social security of approximately $8,550.00. . . . Date of expected receipt is unknown", whereas testimony at trial established that Mrs. Molloy had received that money in November of 1995. These factors make Mrs. Molloy's memory a slim reed upon which to base the court's orders.
Given the history of Mr. Molloy's financial contributions to the maintenance of the mobile home and its present status as free of encumbrances, the court concludes that it is fair and equitable that he retain an equal share in the trailer with Mrs. Molloy. CT Page 7825
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown.
2. The defendant shall pay to the plaintiff as periodic alimony the sum of $150.00 per week. The monthly equivalent of this figure is $645.00, and, if both parties agree, payments may be made on a monthly basis, payable by the fifth day of the month commencing August 5, 1997. Alimony shall terminate upon the death of either party or the remarriage of the plaintiff.
3. All of the defendant's interest in the mobile home located at 17 Navaho Road, East Hartford, Connecticut, is hereby transferred to the plaintiff, pursuant to Section liability in connection with said mobile home or its location, such as taxes, utilities and insurance.
4. Upon the happening of the first of the following events, the defendant shall be entitled to receive from the plaintiff as a property sentence one-half of the net proceeds of sale or one-half of the value of the mobile home, together with all appurtenances, including the pressure wood deck and steps and all fixtures located therein:
 1. The plaintiff's death, remarriage or cohabitation with an unrelated male person;
 2. The plaintiff's ceasing to reside in the mobile home as her principal residence;
 3. The removal of the mobile home from the state of Connecticut;
 4. The plaintiff's sale or other transfer or encumbrance of any interest in the mobile home.
CT Page 7826
 5. The plaintiff shall be responsible for placing a security interest on the title certificate to the mobile home. Plaintiff shall further maintain hazard insurance for the full value of the mobile home, naming the defendant as a joint loss-payee. The net proceeds of sale are defined as the total consideration received for any sale minus any real estate commission actually paid, any attorney's fees paid and any net adjustment due to the buyer for other than damage caused by the plaintiff.
 6. Except as otherwise affected by these orders, each party shall own all of the assets shown on her or his financial affidavit without any claim by the other party. Likewise, each party shall be responsible for his or her liabilities, whether or not shown on their financial affidavits, and shall indemnify and hold harmless the other party from any liability thereon.
 7. The defendant shall maintain the plaintiff as the death beneficiary and/or survivor annuitant on his ironworker's pension.
Joseph M. Shortall, J.